IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

--------------------
No. 93-2559
--------------------


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARTHA JARAMILLO,

Defendant-Appellant.

-------------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Texas

-------------------------------------------------------------------

(January 10, 1995)

Before BARKSDALE and PARKER, Circuit Judges, and COBB, District
Judge.[1]

Cobb, District Judge:

Appellant Martha Jaramillo was convicted for aiding and
abetting others in the possession of cocaine with intent to
distribute in violation of 18 U.S.C. section 2. Jaramillo
contends that the government presented insufficient evidence to
sustain a conviction for aiding and abetting. Jaramillo also
maintains that the trial court should have granted her motion for
a new trial based on newly discovered evidence. Finding that the
trial court committed no error, we AFFIRM.

---

[1]District Judge of the Eastern District of Texas, sitting by
designation.

**BACKGROUND** Martha Jaramillo appealed from her conviction for aiding and abetting in the possession of in excess of five (5) kilograms of cocaine with intent to distribute in violation of Title 21, United States Code, sections 841(a)(1), 841(b)(1)(A) and Title 18, United States Code, section 2. Martha Jaramillo's associates, Luz Maria Jaramillo and Edison Ortiz plead guilty to the these same charges listed in the indictment.

The investigation leading to Martha Jaramillo's arrest and conviction began in Louisville, Kentucky, where authorities apprehended a local cocaine dealer. The Louisville cocaine dealer agreed to act as a confidential informant (CI) for the Drug Enforcement Administration (DEA) by identifying suppliers for his cocaine trade. The CI provided names, addresses and telephone and pager numbers of his suppliers in the Houston area. The DEA then had the CI contact these suppliers to arrange for the purchase of a quantity of cocaine. Initially, the DEA officers monitored several conversations between the CI and Luz Maria Jaramillo.

After a few weeks of negotiation with his Houston suppliers, the CI agreed to send his ex-wife Sherryl and a female friend to Houston to pick up seven kilograms of cocaine. Sherryl flew to Houston. An undercover agent, Linda Smith, played the role of Sherryl's companion. DEA agents then set up an undercover operation at a La Quinta Inn located in southwest Houston.

The DEA had also set up surveillance at the apartment

complex corresponding to the telephone number that the CI used to contact Luz Maria. At approximately 12:50pm on the date of the transaction, DEA agent William Owen watched a silver and black pickup truck arrive at that address. Two women and a man entered the apartment.

On the same day, Sherryl called Luz Maria Jaramillo. Luz Maria agreed to meet with Sherryl at 3:00pm that day at the La Quinta selected. Shortly after 3:00pm, a silver and black pickup truck drove to and parked at the La Quinta. Luz Maria left the truck and walked to the motel room carrying only some keys. Sherryl and Agent Smith greeted her at the motel room door and invited her inside. At that time, Luz Maria tried to convince Sherryl and Agent Smith to conduct the transaction at her apartment complex. When this attempt failed, she called someone that she referred to as her cousin to deliver the cocaine to the La Quinta. The conversation was held in Spanish.

A transcription of this conversation showed that Luz Maria asked the other party to bring "it" to where she was. She also told the party to go all the way to the back after entering the Inn. Luz Maria had to make a second telephone call to give the party additional directions to the motel. According to Agent Smith's testimony, Luz Maria explained to Sherryl and Smith that "they" had gone to the wrong La Quinta Inn, thereby indicating that more than one person was bringing the cocaine.

While waiting for the cocaine to arrive, Luz Maria asked to count the purchase money. Agent Smith brought the $147,000 to

3

the room and watched Luz Maria count the money. It took Luz Maria approximately thirty to forty-five minutes to count the money.

At 4:05pm, a green Chevrolet pickup truck entered the parking lot of the correct La Quinta. Luz Maria said "they're here" in English as she let Edison Ortiz and Martha Jaramillo into the motel room. Ortiz entered the room carrying a duffle bag. Martha, carrying only a purse, entered the room, greeted the occupants, and stood by the motel room wall near the door watching the transaction. Ortiz then removed two kilogram packages from the duffle bag and handed them to Agent Smith. After Agent Smith pretended to sample the contents of the packages, an arrest signal was given.

The agents found Martha's purse empty except for a set of keys to the silver and black pickup truck and a small light bulb from the interior light of an automobile. Investigators determined later that the silver and black pickup truck belonged to Edison Ortiz. Agents also recovered a pistol and a supply of ammunition as well as Luz Maria's identification and other papers in a subsequent search of the silver and black pickup truck.

**ANALYSIS**

*1. Standard of Review*

In reviewing an appeal based on insufficient evidence, the standard is whether any reasonable trier of fact could have found that the evidence established the appellant's guilt beyond a

4

reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);  United States v. Casilla, 20 F.3d 600, 602 (5th Cir.), cert. denied, 115 S. Ct. 240 (1994). The jury retains sole responsibility for determining the weight and credibility of the evidence.  Casilla, 20 F.3d at 602.  As such, we must construe all reasonable inferences from the evidence in favor of the verdict.  Glasser v. United States, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L.Ed.2d 680 (1942); Casilla, 20 F.3d at 206.  A review concentrates on whether the trier of fact made a rational decision to convict or acquit, not whether the fact finder correctly determined the defendant's guilt or innocence.  United States v. Ornelas-Rodriquez, 12 F.3d 1339, 1344 (5th Cir.), cert. denied, 114 S. Ct. 2713 (1994).  Further, the evidence need not exclude every reasonable hypothesis of innocence.  United States v. Velgar-Vivero, 8 F.3d 236, 239 (5th Cir. 1993), cert. denied, 114 S. Ct. 1865 (1994).  However, we must reverse a conviction if the evidence construed in favor of the verdict "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged."  United States v. Menesses, 962 F.2d 420, 426 (5th Cir. 1992) (citing Clark v. Procunier, 755 F.2d 394, 396 (5th Cir. 1985) (quoting Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir. 1982))).

*2. Sufficient Evidence Existed to Convict Jaramillo*
Martha Jaramillo contends that insufficient evidence existed

to support her conviction for aiding and abetting Luz Maria Jaramillo and Edison Ortiz in the possession of cocaine with intent to distribute. The aiding and abetting statute, 18 U.S.C. section 2, provides in pertinent part that:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principle.

To sustain a conviction for aiding and abetting under 18 U.S.C. section 2, the government must show that a defendant associated with a criminal venture, purposefully participated in the criminal activity, and sought by her actions to make the venture succeed.[2] United States v. Ledezma, 26 F.3d 636, 641 (5th Cir. 1994); Casilla, 20 F.3d at 603; see also Nye & Nissen v. United States, 336 U.S. 613, 69 S. Ct. 766, 93 L.Ed.2d 919 (1949). To associate with the criminal venture means that the defendant shared in the criminal intent of the principal. To participate in the criminal activity means that the defendant acted in some affirmative manner designed to aid the venture. United States v. Murray, 988 F.2d 518, 522 (5th Cir. 1993).

To aid and abet simply means to assist the perpetrator of a crime while sharing the requisite criminal intent. "A conviction 'merely requires that [defendants'] association and participation with the venture were in a way calculated to bring

---

[2] The government must also prove both aspects of the crime, possession and intent to distribute, to sustain a conviction for aiding and abetting possession of cocaine with intent to distribute. See United States v. Longoria, 569 F.2d 422, 425 (5th Cir. 1978). Proof of these aspects of the crime are not in dispute.

about that venture's success.'" United States v. Williams, 985 F.2d 749, 753 (5th Cir.), cert. denied, 114 S. Ct. 148 (1993) (quoting United States v. Salazar, 958 F.2d 1285, 1292 (5th Cir.), cert. denied, 113 S. Ct. 185, 121 L.Ed.2d 129 (1992)). Mere presence and association, however, are not alone enough to sustain a conviction for aiding and abetting. Williams, 985 F.2d at 753; United States v. Martiarena, 955 F.2d 363, 366 (5th Cir. 1992).

To sustain this conviction, the evidence and all reasonable inferences from that evidence must show that Jaramillo knew that a drug transaction was occurring, that she associated herself with the actors involved in the transaction, that she participated in the venture with the desire that the venture succeed, and that she perform some designed or intended action to achieve the goal of the crime. Martiarena, 955 F.2d at 366.

We find from the record below that Jaramillo was certainly involved in this narcotics transaction to a greater degree than by her mere presence. She drove with Ortiz to the La Quinta to make the drug delivery and stood in the room while a seven kilogram sale of cocaine took place. Jaramillo also carried a large purse that contained only a set of keys and a small light bulb. This evidence demonstrates that the government has shown that Jaramillo associated with those involved in the criminal transaction.

We find that the government also sufficiently demonstrated that Jaramillo actively participated in the criminal activity in

7

an effort to insure its success. The record shows Luz Maria Jaramillo had taken thirty to forty-five minutes to count the $147,000 purchase money before she made her call for the cocaine to be delivered. Luz Maria did not carry anything into the motel room. Ortiz carried the duffle bag containing the cocaine. A jury could reasonably believe that Jaramillo's empty purse would be used to carry some or all of the seventeen bundles of drug purchase money from the motel to its final destination.[3]

Additionally, Jaramillo possessed keys to the silver and black pickup truck. This provided all three persons involved in the sale with access to an automobile. Ortiz had keys to the green and white pickup, Luz Maria Jaramillo and Martha Jaramillo had keys to the silver and black pickup. A jury could reasonably conclude that, by assuring all three had access to an automobile, no escape route would be cut off if the transaction went awry. Keys to the silver and black pickup truck also provided Jaramillo with access to the pistol and ammunition discovered in the truck, which are often the tools of the drug trade. Additionally, the jury could easily believe that the light bulb for the interior light of a car found in Jaramillo's purse is an item removed by drug dealers to avoid detection upon entering or leaving their vehicles.

Jaramillo's actions are distinguishable from those cases where we reversed aiding and abetting convictions. See e.g.

---

[3] The purse was a rather large expandable carrying case with a fold-over top.

8

<u>Menesses</u>, 962 F.2d at 427; <u>Murray</u>, 988 F.2d at 522. In this case, Jaramillo did more than merely stand and watch the transaction. She carried a large purse that the evidence showed to be the only carrying container available to Luz Maria, Ortiz and Martha Jaramillo to remove $147,000 from the motel room. Jaramillo also had access to an automobile, or escape route, with a readily available firearm and ammunition supply. The facts of the present case, taken together, demonstrate that Jaramillo participated in the criminal action to insure its success. The government presented sufficient evidence that any reasonable jury could have found that Jaramillo affirmatively acted to further the drug transaction.

This court must affirm a conviction for aiding and abetting when sufficient evidence is tendered that the defendant affirmatively acted with the intent to make the transaction succeed. For these reasons, we find that any reasonable trier of fact could have found that the evidence established the appellant's guilt beyond a reasonable doubt. Accordingly, we affirm the conviction below.

*3. Motion for New Trial*

Jaramillo also contends that the district court should have granted her motion for a new trial based on newly discovered evidence. This court reviews the denial of a motion for a new trial for abuse of discretion. <u>United States v. Sanchez-Sotelo</u>, 8 F.3d 202, 212 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1410

(1994).  We disfavor these motions and view them with great caution.  United States v. Pena, 949 F.2d 751, 758 (5th Cir. 1991).  In the present case, the district court did not abuse its discretion in refusing to grant a new trial and we affirm that decision.

To receive a new trial under Fed. R. Crim. P. 33, for newly discovered evidence, Jaramillo must prove that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.  United States v. Time, 21 F.3d 635, 642 (5th Cir. 1994).  The motion for new trial must be denied if all parts of this test are not satisfied.  Pena 949 F.2d at 758; see also United States v. Fowler, 735 F.2d 823, 831 (5th Cir. 1984).

Part one requires that the evidence was newly discovered and was unknown to the defendant at the time of trial.  United States v. Ugalde, 861 F.2d 802, 808 (5th Cir. 1988), cert. denied, 490 U.S. 1097, 109 S. Ct. 2447 (1989).  Part two requires that the failure to detect the evidence was not due to a lack of due diligence by defendant.  Id.  We find that Jaramillo failed to meet part one and part two.

Jaramillo contends that the transcription of certain video tapes incorrectly referred to the various forms of the Spanish verb "decir," meaning "to say," as "they."  Jaramillo asserts

10

that she could not have anticipated that the government would offer false transcription of the tapes to the jury and, as such, her own transcription after trial should be considered newly discovered evidence.

This argument lacks merit. The video of the drug transaction had been in Jaramillo's possession for approximately three months prior to trial. Jaramillo's attorney spoke Spanish and could have interpreted the relevant portions of the transcript, or had the interpretation done by someone fluent in both languages. The law of this circuit provides that evidence is not considered "newly discovered" where a defendant is in possession of evidence before trial but does not realize its relevance. United States v. Loney, 959 F.2d 1332, 1343 (5th Cir. 1992). As such, Jaramillo failed to meet part one.

Even if Jaramillo could show that the evidence was newly discovered, she failed to exercise due diligence. Due diligence requires that a defendant exert some effort to discover the evidence. No plausible explanation exists as to why this alleged transcription error could have not have been discovered before trial. Jaramillo knew that the video would be introduced at trial. She had ample opportunity to have it studied by a Spanish language expert. Jaramillo allegedly determined after trial that the translation of the tapes incorrectly referred to the various forms of the Spanish verb "decir," meaning "to say," as "dey say." After trial is too late. Consequently, Jaramillo failed to exercise due diligence in not reviewing the transcription of

11

the video tapes and, as a result, failed to meet the second part of the test.  See e.g. Pena, 949 F.2d at 758.

Finally, assuming the telephone conversation could be interpreted two different ways, we find that the introduction of such evidence would not probably produce an acquittal.  The evidence fails to raise a reasonable doubt as to Jaramillo's guilt.  United States v. Snoddy, 862 F.2d 1154, 1156 (5th Cir. 1989).  Jaramillo arrived with Ortiz and the seven kilograms of cocaine.  She entered the room where the transaction occurred.  She carried a large empty purse which was capable of carrying the purchase money from the motel room.  Luz Maria had no purse or container for the seventeen bundles of money that she had laboriously counted earlier.  Whether Luz Maria referred to "decir" instead of "dey say" on the tape in reference to whether more than one person was bringing the cocaine does not raise a reasonable doubt as to the guilt of Martha Jaramillo.  The jury also had an opportunity to watch and listen to the video tape. Any discrepancy in Luz Maria's statements would have been impeaching at best.  Consequently, we find no indication that the district court abused its discretion in refusing to grant defendant's motion for new trial.

The judgment of the district court is, in all respects, AFFIRMED.