**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 95-40073**
**Summary Calendar**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**CEDRICK DEMOND COLEMAN,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Eastern District of Texas
(6:94-CR-31-2)

November 1, 1995

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

PER CURIAM:[*]

<u>BACKGROUND</u>

Based on a Crimestoppers tip naming Cedrick Demond Coleman (Coleman), Donald Ray Coleman (Donald), and Napoleon Beazley (Beazley), Federal Bureau of Investigation (FBI) agents and local law enforcement agents began an investigation in Grapeland, Texas,

[*] Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the Court has determined that this opinion should not be published.

into the carjacking of a yellow Mercedes Benz and the murder of John Luttig in Tyler, Texas, on April 19, 1994. FBI Special Agent Dennis Murphy testified that Coleman voluntarily arrived at the Houston County Sheriff's Department for questioning. After initially denying involvement, Coleman told Murphy that he and Beazley went to the mall in Corsicana, Texas, on April 18 because Beazley wanted to "jack" a car. They did not find a suitable car that night, so they decided to go home and to try again the next night.

On April 19, Beazley, Coleman, and Coleman's brother, Donald, went to Corsicana in an unsuccessful attempt to visit some of Coleman's friends. They decided to drive to Tyler. Coleman told Murphy that he was driving Beazley's parents' car, a maroon Ford Probe. Beazley saw a Lexus and said that it was the car he wanted to "jack" and instructed Coleman to follow it. Coleman said that he let the car get away from them by slowing down. They went to the mall in Tyler, but it was closed. They began heading home towards Grapeland, but Beazley told Coleman to turn around and return to Tyler.

Coleman told Murphy that after they left the Tyler mall, he was driving the Probe. Beazley spotted a Mercedes Benz in a parking lot of an El Chico restaurant and instructed Coleman to pull into the parking lot. Coleman pulled next to the Mercedes and Beazley got out of the Probe and "racked a[]round into the gun." When a man spotted him, Beazley got back into the Probe and they

2

left.  They drove to Coffee Landing and switched drivers.  Beazley began driving and Coleman sat in the passenger seat.

On the highway heading into Tyler, Beazley spotted a Mercedes Benz that he wanted to "jack."  Beazley ran a red light, attempted to catch up with the Mercedes, and followed it into a residential neighborhood.  Beazley stopped the Probe at the intersection of Regency and Stagecoach, exited the car, and ran across a front lawn and up a driveway.  Coleman told Murphy that he and Donald stayed in the car.  When he heard a gunshot, Coleman said he ran to the end of the driveway and saw Beazley standing over a man, looking for the car keys.

Coleman later stated that Beazley exited the Probe at the Luttigs' carrying a .45 handgun, which Coleman described as a "large black gun" which Beazley's aunt had bought for him.  Donald, carrying a sawed-off shotgun, got out of the car "to see what [was] going to happen."  Coleman said that he did not get out of the car.  Coleman said that after the Mercedes pulled out of the driveway, he crawled into the driver's seat of the Probe, turned the car around, and followed the Mercedes.

Neighors testified that they awoke to the sound of three gunshots.  They looked out their windows and noticed a red "sporty type" car with its headlights turned off turning the corner from Regency onto Stagecoach.  Because it backed up and pulled forward several times, it was obvious to neighbors that the red car was waiting on a car coming out of John and Bobbie Sue Luttig's driveway on Regency.

Neighbors testified that they saw the Luttigs' yellow Mercedes Benz backing out of the driveway very fast, hitting a landscape retaining wall, pulling forward, then backing up again. One neighbor stated that when the Mercedes Benz drove in front of her house she could see the silhouette of two heads in the car and noticed that the front grill of the car was full of shrubbery.

The Mercedes headed west on Regency, then turned north on Stagecoach. As the Mercedes rounded the corner, the red car "took off" in front of it.

About a quarter of a mile from the Luttigs' house some shrubbery was found lying in the middle of an intersection. The Mercedes Benz was found abandoned about "a mile to a mile and a half" from the Luttigs' home. The car had a flat tire and some shrubbery hanging from it. A palm print on the car matched that of Napoleon Beazley's.

Coleman's neighbor, Sheri Lewis, testified that Coleman told her that "they had attempted to jack a car" and that Beazley shot a man. John Luttig had suffered a "grazing" gunshot wound to the right side of his head and a fatal gunshot wound to the left side of his head. The wounds were consistent with those caused by a .45 caliber handgun. Three .45 shell casings were found at the scene.

With Coleman's assistance, agents found a Haskell .45 automatic pistol, a box of cartridges, and a .12 gauge shotgun directly across the street form Beazley's house. Shotgun shells were found during a search of the Beazley's Probe. The barrel of

4

the shotgun had been "very crudely cut." It was a functioning pump or slide-action shotgun.

Smith Reynolds, general sales manager of a Mercedes dealership, testified that all Mercedes passenger vehicles are manufactured and assembled outside of the United States, in Germany or South Africa. He testified that the Luttigs' Mercedes must have traveled in foreign commerce.

Coleman and Donald were charged by indictment with one count of carjacking in violation of the Anti Car Theft Act of 1992, 18 U.S.C. § 2119, and aiding and abetting in violation of 18 U.S.C. § 2 (Count 1); and two counts of using or carrying of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) and aiding and abetting in violation of 18 U.S.C. § 2 (Count 2 -- .45 caliber handgun and Count 3 -- short-barreled shotgun). The brothers were tried separately. A jury found Coleman guilty on all three counts. The district court sentenced Coleman to 365 months imprisonment on Count 1; 60 months on Count 2, to be served consecutively to Count 1; and 120 months on Count 3, to be served consecutively to Count 1 and concurrently with Count 2, resulting in a total term of imprisonment of 485 months, to be followed by five years supervised release. Coleman filed a timely notice of appeal. Coleman does not challenge his sentence.

## OPINION

Coleman argues that there was insufficient evidence to support his conviction on all three counts. He does not argue that Beazley and Donald did not commit the carjacking. He argues that the

5

evidence shows that he was an unwilling participant, that he did not possess a firearm, that he did not carjack the Luttigs' car, and that he was merely abandoned in the Probe when Beazley ran up the Luttigs' driveway. Thus, he argues that the evidence was insufficient to show that he aided and abetted the carjacking or the use of the guns during a crime of violence.

Coleman also argues that the evidence was insufficient to show that he had the requisite state of mind to support his conviction on Count 3, aiding and abetting the use of the shotgun during a the carjacking. He argues that the evidence shows that he did not know of the shotgun until Donald got out of the Probe and walked up the Luttigs' driveway.

At the close of the Government's case-in-chief, Coleman moved for a judgment of acquittal and renewed it at close of all evidence.

In reviewing the sufficiency of the evidence, this Court must determine whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. **United States v. Martinez**, 975 F.2d 159, 160-61 (5th Cir. 1992), cert. denied, 113 S. Ct. 1346 (1993). Reasonable inferences are construed in accordance with the jury's verdict. **Id**. at 161. The jury, moreover, is solely responsible for determining the weight and credibility of the evidence. **Id**. This Court will not substitute its own determination of credibility for that of the jury. **Id**. The scope of appellate review remains the same whether

6

the evidence is direct or circumstantial.  **United States v. Lorence**, 706 F.2d 512, 518 (5th Cir. 1983).

To support a conviction for carjacking under 18 U.S.C. § 2119, the Government is required to prove that "`the defendant, (1) while possessing a firearm, (2) took from the person or presence of another (3) by force and violence or intimidation (4) a motor vehicle which had moved in interstate or foreign commerce.'" **United States v. Harris**, 25 F.3d 1275, 1279 (5th Cir.) (citation omitted), <u>cert.</u> <u>denied</u>, 115 S. Ct. 458 (1994).  To support a conviction for using a firearm in the commission of a crime of violence under 18 U.S.C. § 924(c)(1), the Government must prove that "(1) the defendant knowingly used or carried a firearm, and (2) the use or carrying of the firearm occurred during and in relation to a `crime of violence.'"  **Id**. (citation omitted).

To establish that a defendant aided and abetted, the Government must show that the defendant "(1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by action to make the venture succeed."  **Id**.  Association with the venture means the defendant shared the principal's criminal intent; participation means "the defendant acted in some affirmative manner designed to aid the venture."  **United States v. Jaramillo**, 42 F.3d 920, 923 (5th Cir.), <u>cert. denied</u>, 115 S. Ct. 2014 (1995).  "Mere presence and association" alone are not enough to sustain a conviction for aiding and abetting.  **Jaramillo**, 42 F.3d at 923.

7

Our review of the record is hindered because neither the videotape nor the transcripts of Coleman's statements were made part of the record on appeal. The clerk's office indicates that no additional boxes of evidence were filed with this appeal. On a sufficiency challenge, it is the appellant's duty to include in the record a transcript of all evidence relevant to that issue. Fed. R. App. P. 10(b)(2), 11(a); **Powell v. Estelle**, 959 F.2d 22, 26 (5th Cir.), cert. denied, 113 S. Ct. 668 (1992). If the appellant fails to provide the necessary record for review of his issues, this Court need not consider the issues on appeal. **Id**.; see **Richardson v. Henry**, 902 F.2d 414, 416 (5th Cir.), cert. denied, 498 U.S. 901 (1990) and 498 U.S. 1069 (1991). "The failure of an appellant to provide a transcript is a proper ground for dismissal of the appeal." **Id**.

The evidence presented on appeal supports a reasonable inference by the jury that Coleman knew about the guns in the car, knew of the planned carjacking, and participated in it by waiting in the Probe to see if the carjacking was successful and by driving the Probe away from the scene of the crime. The evidence is sufficient to establish that Coleman aided and abetted the use of the shotgun during the carjacking. Coleman saw Donald get out of the Probe carrying the sawed-off shotgun. Coleman also accurately described the shotgun to officers, supporting a reasonable inference that he saw and knew of the shotgun on the night of April 19. His argument that the evidence shows that he protested to the earlier carjacking attempts, that he was "abandoned" in the Probe

8

while the carjacking was committed, and that he did not know about the shotgun until Donald got out of the Probe is a challenge to the weight of the evidence. The jury, as sole arbiter of the weight of the evidence and the credibility of witnesses was entitled to disbelieve Coleman's assertions that he was an unwilling participant. See **Martinez**, 975 F.2d at 161.

Coleman argues that the district court's jury instructions inadequately informed the jury of the elements necessary for an "aiding and abetting" conviction.

Coleman did not submit proposed instructions on aiding and abetting. He objected at trial to the aiding-and-abetting charge on the grounds that (1) there was insufficient evidence to support a conviction for aiding and abetting the carjacking, (2) the charge reduced the Government's burden of proof by not tracking the language of the indictment, and (3) there is no authority for a conviction for aiding and abetting the possession of firearms during a crime of violence.

Coleman also argues that the "[c]ourt's charge is plainly in error in failing to clearly instruct the jury on the state of mind required to convict [him] of Counts 2 and 3." He argues that the district court failed to instruct the jury that to convict under § 924(c) "the government must prove that the defendant had knowledge of each firearm in question."

Coleman asserts that he objected at trial to the jury charges related to the firearms offenses. The Government argues that Coleman did not raise this specific "state of mind" objection in

the district court. Coleman objected to the aiding-and-abetting instructions in Counts 2 and 3 "as improperly extending and expanding the definition of possession" because it allows the Government to "convict the defendant on proof less than the proof that would be required should the Government be held to what they have pled in the indictment." Thus, whether the court erred in instructing the jury on the grounds raised on appeal is reviewed for plain error.

Under Fed. R. Crim. P. 52(b), this Court may correct forfeited errors only when the appellant shows the following factors: (1) there is an error, (2) that is clear or obvious, and (3) that affects his substantial rights. **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (citing **United States v. Olano**, 113 S. Ct. 1770, 1776-79 (1993)), <u>cert. denied</u>, 115 S. Ct. 1266 (1995). If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. **Olano**, 113 S. Ct. at 1778.

Parties are required to challenge errors in the district court. When a defendant in a criminal case has forfeited an error by failing to object, this Court may remedy the error only in the most exceptional case. **Calverley**, 37 F.3d at 162. The Supreme Court has directed the courts of appeals to determine whether a case is exceptional by using a two-part analysis. **Olano**, 113 S. Ct. at 1777-79.

10

First, an appellant who raises an issue for the first time on appeal has the burden to show that there is actually an error, that it is plain, and that it affects substantial rights. **Olano**, 113 S. Ct. at 1777-78; **United States v. Rodriguez**, 15 F.3d 408, 414-15 (5th Cir. 1994); Fed. R. Crim. P. 52(b). Plain error is one that is "clear or obvious, and, at a minimum, contemplates an error which was clear under current law at the time of trial." **Calverley**, 37 F.3d at 162-63 (internal quotation and citation omitted). "[I]n most cases the affecting of substantial rights requires that the error be prejudicial; it must affect the outcome of the proceeding." **Id**. at 164. This Court lacks the authority to relieve an appellant of this burden. **Olano**, 113 S. Ct. at 1781.

Second, the Supreme Court has directed that, even when the appellant carries his burden, "Rule 52(b) is permissive, not mandatory. If the forfeited error is `plain' and `affect[s] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." **Olano**, 113 S. Ct. at 1778 (quoting Fed. R. Crim. P. 52(b)) (alterations in original). As the Court stated in **Olano**:

> the standard that should guide the exercise of [this] remedial discretion under Rule 52(b) was articulated in **United States v. Atkinson**, 297 U.S. 157, 56 S. Ct. 391, 80 L. Ed. 555 (1936). The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

**Olano**, 113 S. Ct. at 1779 (quoting **Atkinson**, 297 U.S. at 160) (alterations in original). Thus, this Court's discretion to

11

correct an error pursuant to Rule 52(b) is narrow. **Rodriguez**, 15 F.3d at 416-17.

The district court has substantial latitude in tailoring its instruction if it fairly and adequately covers the issues presented in the case. **United States v. Masat**, 948 F.2d 923, 928 (5th Cir. 1991), cert. denied, 113 S. Ct. 108 (1992). This Court will review whether the instruction, "as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." **United States v. Brown**, 49 F.3d 135, 137 (5th Cir. 1995) (internal quotations and citation omitted).

The elements of aiding and abetting are that the defendant (1) associated with the criminal enterprise, i.e. shared the principal's criminal intent; (2) participated in the venture by acting in an affirmative manner; and (3) sought by his action to make the venture succeed. **Harris**, 25 F.3d at 1279; **Jaramillo**, 42 F.3d at 923.

The district court instructed the jury that "if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons as though the defendant had committed the acts or engaged in such conduct." The court stated that "the accused [must] deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime." The district court admonished the jury that it "may not find any defendant guilty unless you find beyond a reasonable

12

doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law."

The district court's aiding-and-abetting instruction was a correct statement of the law applicable to this case. See **Harris**, 25 F.3d at 1279; **Jaramillo**, 42 F.3d at 923. Thus, the district court did not commit any error, plain or otherwise, in instructing the jury on aiding and abetting.

The district court instructed the jury that Coleman was charged in Counts 2 and 3 with aiding and abetting the use or carrying of a firearm during the commission of a crime of violence. The district court instructed the jury that to convict Coleman on these counts, the Government must have proved beyond a reasonable doubt, (1) that Coleman committed the offense of aiding and abetting carjacking as charged in Count 1; (2) Donald or Beazley knowingly and intentionally used or carried a .45 caliber pistol and a short-barrelled shotgun during or in relation to a crime of violence; and (3) that Coleman knowingly and intentionally aided and abetted, counseled, induced, or procured Donald or Beazley to use or carry those firearms during a crime of violence. The district court stated that his previous instructions concerning aiding and abetting also applied to these two counts.

The district court defined "knowingly" as "to do something voluntarily and intentionally, and not because of a mistake or accident or other innocent reason." He defined a willful act as

13

one "done voluntarily and intentionally and with specific intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law."

The district court's instruction as a whole adequately informed the jury of the knowledge requirement for a conviction for aiding and abetting the use of a firearm in connection with a crime of violence. The instruction was an accurate statement of the law, thus the district court did not commit error, plain or otherwise. See **Harris**, 25 F.3d at 1279.

Coleman's defense at trial was that he, "if guilty of anything, was guilty of not reporting what happened as soon as he should have, and at most, as an accessory after the fact." Coleman requested jury instructions on misprision of a felony and accessory after the fact. He objected to the district court's refusal to include these charges.

Citing **Mathews v. United States**, 485 U.S. 58, 63 (1988), Coleman argues that he was entitled to an instruction on this defense because there was sufficient evidence for the jury to find him guilty of misprision or of being an accessory after the fact. He argues that "[g]iven the fact that [his] sole defenses rested upon the defenses of misprision and accessory after the fact, the failure to give the instructions seriously impaired [his] defense."

Guilt of a lesser included offense is not a defense to the greater offense. See **United States v. Valencia**, 957 F.2d 1189, 1198 (5th Cir.), cert. denied, 113 S. Ct. 254 (1992). Under Fed.

14

R. Crim. P. 31(c), a defendant is entitled to a jury instruction on a lesser included offense only if "(1) the elements of the offense are a subset of the elements of the charged offense and (2) the evidence at trial permits a jury to rationally find the defendant guilty of the lesser offense yet acquit him of the greater." **United States v. Deisch**, 20 F.3d 139, 142 (5th Cir. 1994). This Court reviews <u>de</u> <u>novo</u> the district court's determination whether an offense is a lesser included offense of the crime charged. **United States v. Harrison**, 55 F.3d 163, 167 (5th Cir. 1995). The determination whether a rational jury could convict the defendant of the lesser included offense is reviewed for an abuse of discretion. **Id**. at 167-68.

In evaluating the first prong, this Court applies the "statutory elements" test. **Deisch**, 20 F.3d at 143. Under the statutory-elements test, "`an offense is not lesser included unless each statutory element of the lesser offense is also present in the greater offense.'" **Id**. (citation omitted).

Thus, the district court should have given a lesser included offense instruction only if all of the elements of misprision or of accessory after the fact are also elements of aiding and abetting or of the carjacking or firearm offenses. The elements of misprision of felony are "(1) the defendant had knowledge that a felony was committed; (2) the defendant failed to notify authorities of the felony; and (3) the defendant took an affirmative step to conceal the felony." **United States v. Adams**, 961 F.2d 505, 508 (5th Cir. 1992); 18 U.S.C. § 4.

15

Concealment and failure to notify authorities are not elements of aiding and abetting. 18 U.S.C. § 2. Nor are they elements of the carjacking or firearms charges. 18 U.S.C. §§ 2119 and 924(c)(1). Thus, Coleman was not entitled to a lesser-included-offense instruction on misprision.

An accessory after the fact, (1) knowing that another has committed an offense, (2) gives comfort or assistance to the offender (3) for the purpose of hindering or preventing his apprehension, trial, or punishment. 18 U.S.C. § 3; **United States v. Triplett**, 922 F.2d 1174, 1180 (5th Cir.), <u>cert. denied</u>, 500 U.S. 945 (1991). The required purpose of avoiding justice is not an element of any of the charged offenses. <u>See</u> 18 U.S.C. §§ 2, 2119, and 924(c)(1). Coleman was not entitled to a lesser-included-offense instruction on accessory after the fact. Thus, the district court did not abuse its discretion by refusing to give such an instruction.

**AFFIRMED**

16