**IN UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

N0. 00-40298

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAVIER VALDEZ,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Southern District of Texas

_____

November 27, 2001

Before BARKSDALE and STEWART, Circuit Judges and ROSENTHAL, District Judge.[*]

PER CURIAM:[**]

Javier Valdez ("Appellant") claims that there is insufficient evidence to support his money

laundering conviction. For the reasons, which follow, we confirm the conviction.

BACKGROUND FACTS

Javier Valdez was one of 24 defendants charged in a 16-count indictment centered around a

Laredo, Texas-based drug ring. Valdez was charged with intent to distribute marijuana and cocaine

(count 2) and one count of conspiracy to launder monetary instruments (count 13). He was one of

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[**]Pursuant to CIR. R. 47.5, the court has determined that this opinion should not be published and is not
precedent except under the limited circumstance set forth in 5th CIR. R. 47.5.4.

two defendants to plead not guilty and proceed to trial. Valdez was acquitted of the drug count but found guilty on the money laundering count. The district court sentenced Valdez to 63 months imprisonment followed by three years of supervised release. The district court allowed Valdez to remain free pending this appeal.

Valdez allegedly was involved in a drug ring headed by Ernesto Ramirez that supplied and distributed marijuana and cocaine out of Laredo to Ohio and other locations in the United States. At trial, there was testimony that Valdez acted as a spotter for the marijuana bundles transported to Ohio. In addition, testimony showed that Valdez was involved in a strong-arm incident involving the ambush beating of a dealer, who had planned on switching from Ramirez to another distributor.

On July 1, 1995, Valdez and Ramirez were approached by officers in the Laredo Airport after arriving on a flight from Houston. Both men were traveling under aliases and, when questioned separately, gave different stories as to where they had traveled, with neither story matching the ticket itineraries. Their tickets were paid for in cash. Though both were suspected of carrying drug proceeds, no contraband was discovered in their luggage, and they were released.

The money-laundering count focused primarily, but not exclusively, on the purchase by Valdez of five vehicles during a six-month period in 1995. The five automobiles were bought from the same dealership, and the transactions involved the same salesman, who has since been fired.

On March 5, 1995, Valdez bought a used Chevrolet Suburban for $25,607.87. The financing required Valdez to make 60 monthly payments of $621.08. On March 15, 1995, just 10 days later, Valdez bought a new 1994 Chevrolet pickup for $29,191.77, requiring Valdez to make 47 monthly payments of $668.75. On May 22, 1995, Valdez bought a new 1995 model Chevrolet pickup for $45,637.15, requiring a total of 72 payments of $893.34.

2

Nine days later, Valdez bought yet another pickup truck, this one a new Dodge Ram, for $45, 061.19, to be paid off in 72 payments of $983.33. Finally, in August, Valdez purchased a new Chevrolet Camaro for $28, 834.18. For this purchase, Valdez agreed to make 72 payments of $598.42.

Valdez's credit reports listed his current employer as Narvaez Meat Market. When financing the five automobiles, however, Valdez listed his employer as Ramirez Trucking. Ramirez Trucking is owned by Modesto Ramirez, a codefendant himself and brother of Ernesto Ramirez. Modesto Ramirez submitted two letters to the dealership on Valdez's behalf. The first stated that Valdez worked for Ramirez and earned $3,800 per month. The second letter indicated that, including money from leasing a truck cab, Valdez earned as much as $5,900 per month. Only the latter one was dated, however, and this letter was not sent until September of 1995, after all five vehicles had been purchased.

The office manager for the car dealership identified Valdez from a copy of his driver's license and could not state with certainty whether it was actually Valdez filling out the loan applications. She did acknowledge that the terminated salesman probably made a substantial commission on the sales.

STANDARD OF REVIEW

The standard of review for a sufficiency of the evidence claim is whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. See United States v. Martinez, 975 F.2d 159, 160-61 (5th Cir. 1992). All evidence, direct and circumstantial, is viewed in the light most favorable to the jury's verdict, and all credibility determinations and reasonable inferences are resolved in favor of the verdict. See United States v. Resio-Trejo, 45 F.3d

3

907, 910 (5th Cir. 1995). The verdict is upheld so long as the jury's verdict was rational; this court does not address whether the jury was correct on the issue of guilt or innocence. See United States v. Jaramillo, 42 F.3d 920, 923 (5th Cir. 1995).

## DISCUSSION

### I.

Appellant claims that, because the jury acquitted him on Count 2 of the indictment (conspiracy to possess with intent to distribute cocaine and marijuana), a conviction on Count 13 (conspiracy to launder money) is unsustainable. Appellant contends that the two conspiracies had the same goals and were, thus, in reality only one conspiracy. He maintains that because one cannot launder money in support of an illegal narcotics operation without also being a member of the narcotics distribution conspiracy, one cannot be convicted of the former, lesser included count while being acquitted of the latter.

These crimes, however, have separate elements. In order to be convicted of conspiracy to launder money, Appellant must have conducted or have attempted to conduct a financial transaction involving the proceeds of an illegal activity. See United States v. Westbrook, 119 F.3d 1176, 1191 (5th Cir. 1997). The term "financial transaction" includes any transaction that in any way affects interstate commerce (1) involving the movement of funds by wire or other means, (2) involving one or more monetary instruments, or (3) involving the transfer of title to any real estate, vehicle, vessel, or craft. 18 U.S.C. § 1956(c)(4). These are different crimes and money laundering has different, additional elements. Thus, the money laundering conspiracy cannot be a lesser included offense as Appellant claims.

4

Appellant's inconsistent verdicts argument is not supported by any case law. In fact, "it is well established that juries are entitled to render inconsistent verdicts." United States v. Parks, 68 F.3d 860, 865 (5th Cir. 1995). Moreover, an acquittal on one count "'does not establish any facts favorable to the defense for the purpose of determining the sufficiency of the evidence on the counts of conviction.'" Id. (quoting United States v. Nguyen, 28 F.3d 477, 480 (5th Cir. 1994)). An inconsistency may be the result of lenity, but such a compromise by the jury in no way invalidates the conviction. See United States v. Zuniga-Salinas, 952 F.2d 876, 878 (5th Cir. 1992).

II.

A prima facie case for conspiracy to commit money laundering is established where (1) there was an agreement between two or more persons to commit money laundering, and (2) the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose. See United States v. Threadgill, 172 F.3d 357, 366 (5th Cir. 1999). The second element, of course, is common to all conspiracy claims. The first element, which defines money laundering, requires a showing that "the defendant (1) conducted or attempted to conduct a financial transaction, (2) which the defendant knew involved the proceeds of a specified unlawful activity, (3) with the intent either to promote specified unlawful activity (§1956(a)(A)(i)), or to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity (§1956(a)(B))." United States v. Wyly, 193 F.3d 289, 295 (5th Cir. 1999) (internal citation omitted). "Financial transaction" can include wire transfers and the purchase of automobiles. 18 U.S.C. § 1956(c)(4).

Evidence of Appellant's participation in a conspiracy to launder money derives primarily, but not exclusively, from his purchase of five vehicles in a single six-month span. Part of the government's case rested on the premise that Appellant made monthly payments on all five vehicles,

5

a sum of $3,718, simultaneously while earning only $3,800. The government's theory of the case is not supported dollar for dollar in the trial record. See Government Exhibits 45 A & C. Rather, Appellant traded in the Suburban when he purchased the Chevrolet truck on March 5. In addition, the 1994 pickup was traded in to buy the Dodge Ram on May 31. See id. at 45 B &D. Thus, at the conclusion of the buying spree, Appellant was making monthly payments of only $2,075, rather than $3,718 as alleged by the prosecution.

However, even in light of this fact, we find that the evidence is sufficient to justify Valdez's conviction. If Appellant never worked for Ramirez Trucking making $3,800 per month and, in fact, worked at Narvaez Meat Market making so little that he occasionally lived out of his car, as he claims, then the jury certainly could have inferred that Appellant could not have afforded $2,075 either. Though the exact figure was not given at trial, Appellant argues t hat he made just $800 a month as an employee of Narvaez Meat Market and did not work for Ramirez Trucking. If that is so, and if, as Appellant asserts, he made only $800 a month, then any mischaracterization by the prosecution inflating his $2,075 monthly payments to over $3,000 a month is of little consequence. He could no more afford the $3,000 worth of payments than he could afford the $2,000 worth of payments. Though Appellant is correct that this evidence can point to the possibility that someone other than Valdez purchased the vehicles in his name and without his knowledge, it also supports the government's claim that Valdez was engaged in illegal financial transactions on behalf of the Ramirez drug organization. The evidence need not exclude "every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Lage, 183 F.3d 374, 382 (5th Cir. 1999).

6

Supporting the government's case was testimony from an officer assigned to investigate the Ramirez ring, who stated that individuals often buy cars to be used by drug dealers so that the dealers' identities are concealed, preventing them from being associated with the vehicles. He further testified, on cross-examination, that he had never seen Valdez driving any of the vehicles Valdez allegedly purchased. Again, this is capable of more than one inference, but it is consistent with a reasonable jury's determination that Valdez purchased the vehicles for use by the Ramirez drug organization.

Furthermore, there was other evidence presented to the jury. It was alleged that Valdez accompanied Ramirez underlings to Toledo working as a spotter and to help collect money for Ramirez. He wired $500 from Dallas to Laredo via Western Union. Though this was directed at a "Jaime Valdez," a major part of Ramirez's operation involved wiring proceeds in small amounts and using aliases to avoid attracting the attention of law enforcement. Valdez's assistance to Ramirez, the wire transfer, the assault in the hotel, his trips to the Midwest, and his collection of automobiles, are a sufficient amount of circumstantial evidence that we cannot say that no reasonable jury could have convicted Appellant.

## CONCLUSION

There is ample evidence from which the existence of a conspiracy to launder money, and Appellant's participation in that conspiracy, could be inferred by a rational jury. For these reasons, the judgment of the district court is AFFIRMED.

AFFIRMED

7