United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 15, 2004**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 4, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————————

No. 03-31061

—————————————

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

MICHAEL O'KEEFE, SR., GARY BENNETT;
JOHN O'BRIEN,

                              Defendants-Appellants.

———————————————————————————————

Appeals from the United States District Court for
the Eastern District of Louisiana
(USDC No. 95-CR-106-1-S)

———————————————————————————————

Before REAVLEY, WIENER and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

———————————————

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The order denying the motions for new trial is affirmed. We essentially agree with the Order and Reasons of the district court, and appellants do not persuade us that the district court abused its discretion in denying the motions. We make the following additional observations.

O'Keefe's argument to this court that Moore gave "false testimony to the jury that he had 'no deal' with the Government," O'Keefe's opening brief at 9, and that in a post-trial civil deposition Moore "for the first time admitted that, through his attorney, he did obtain a 'deal with the government,'" id. at 28, is highly misleading and a mischaracterization of the record. Moore testified at the criminal trial at length about his plea agreement. We previously noted in the second appeal to this court that "Moore admitted he stole money from his trust account with O'Keefe's blessing, and had pleaded guilty to such and was testifying pursuant to a plea agreement." O'Keefe II, at 27. The plea agreement itself was admitted into evidence.

O'Keefe argues that Moore revealed after the criminal trial that he had an agreement with the State of Louisiana "for forbearance for state prosecution for theft." O'Keefe brief at 14. Moore testified at the criminal trial that he had pleaded guilty to both state and federal charges and was testifying pursuant to a federal plea bargain. O'Keefe does not persuade us that the federal government was aware of the particulars of his agreement with state authorities or that these particulars would have been considered material to the federal criminal jury. Accordingly, he has not shown a Brady or Napue violation or other grounds for a new trial based on the state charges.

2

Regarding the three interview records produced at the hearing on the motion for new trial, appellants make several arguments. We assume without deciding that these documents should have been turned over to the defense under the Jencks Act or for some other reason. Insofar as these documents reveal a plan by O'Keefe to fool the auditors with a fake check, this information strikes us as highly inculpatory of O'Keefe and appellants do not persuade us that such information, if revealed to the jury, would have assisted their defense.

Insofar as appellants argue that the documents reveal that Moore was somehow persuaded to change his initial position with the federal authorities and turn on O'Keefe, we agree with the district court that the documents do not support this theory.

O'Keefe also argues that the documents reveal that O'Keefe had tape-recorded a conversation with Moore immediately after going to the federal authorities rather than immediately before going to the authorities as he testified at trial. The government contends that this argument is a new one and should be reviewed for plain error only. We agree. Moreover, even if the argument had been raised below O'Keefe does not persuade us that the alleged one-day discrepancy in the date Moore first tape-recorded a conversation with O'Keefe is so material as to merit a new trial. The evidence presented to the jury was clear that Moore was a cooperating witness who was testifying pursuant to a plea bargain, whether the first recording was made immediately before or after Moore first met with federal authorities. The defense would have been able to argue that Moore was trying to "set up" O'Keefe either way.

Appellants make references to a missing 302 report Agent Phillips wrote of the initial interview with Moore. They cite Phillips' testimony that she would normally prepare a 302 and could not explain why the 302 for the initial meeting was missing. Appellants have not demonstrated a Brady violation or any other reversible error with regards to this alleged missing interview memo. They do not prove that this 302 ever existed, that it contained exculpatory information, that it was suppressed, or that it was material.

O'Keefe alleges as another Brady violation that the government failed to disclose a state interview report of an interview with Gene Broussard, deputy receiver for the Louisiana Department of Insurance. The report indicates that Moore told Broussard, "If I'm going down, I'm going to take other people with me." The district court found that this document was available from the state to defendants upon request. This finding was based on testimony from a state official and is not clearly erroneous. "Brady does not require the government to conduct a defendant's investigation or to assist in the presentation of the defense's case." United States v. Aubin, 87 F.3d 141, 148 (5th Cir. 1996) (internal quotation marks omitted). Further, appellants do not persuade us that the statement was material in the context of the lengthy criminal trial during which Moore was subjected to extensive cross-examination. The jury was well aware that Moore had recorded conversations, was otherwise cooperating with the government, and was testifying against the defendants in hopes of a reduced sentence. He testified that pursuant to the plea agreement the government had limited his criminal exposure to a

single felony and that if he gave truthful testimony the government might file a motion for a reduced sentence.

Bennett makes several arguments based on alleged newly discovered evidence in the form of deposition and hearing testimony of L.D. Barringer, and a 302 report of an interview with Barringer. Bennett argues that based on this evidence Barringer denies that he ever attended a meeting about which Moore testified at trial. At trial, Moore testified that based on a meeting with Barringer and others he believed the money that was held in his trust account belonged to BCI or Associated Auditors rather than PNRRG. Bennett does not persuade us that Barringer's testimony contradicting Moore's testimony at trial is material. In order to merit a new trial, the defendant must prove that (1) the evidence is newly discovered and was unknown to him at the time of trial, (2) the failure to discover the evidence was not due to his lack of diligence, (3) the evidence is not merely cumulative, but is material, and (4) the evidence would probably produce an acquittal. See United States v. Jaramillo, 42 F.3d 920, 924 (5th Cir. 1995).

Whether or not the money Moore held in his trust account belonged to BCI or PNRRG was not central to government's case. Bennett's argument is similar to a motion for new trial we reviewed in O'Keefe II. In this earlier motion, O'Keefe claimed "that at trial Moore testified that money in the trust account was BCI's money, while in the later civil proceeding he claimed that the funds belonged to the PNRRG estate. . . . This evidence, even if newly discovered, does not change the fundamental facts that Moore admitted he stole money from his trust account with O'Keefe's blessing, and had pleaded

5

guilty to such and was testifying pursuant to a plea agreement. The district court did not abuse its discretion in denying a new trial." O'Keefe II, at 27. We also stated that as to the earlier motion "O'Keefe does not explain convincingly why it matter whether the funds were held in trust for BCI or PNRRG." Id. We think the same analysis applies to the present appeal.

Bennett also cites other testimony from Barringer's post-trial civil deposition which is allegedly inconsistent with the government's theory of the case in the criminal trial. However, Bennett does not persuade us that the district court erred in finding that "Barringer was available to the defendants at trial, and it is not probable that the introduction of the testimony from Barringer's civil deposition would produce an acquittal." At the new trial hearing, Barringer was shown the side agreements with AIC which he had not seen at his deposition. The AIC side agreement was a key component of the overall scheme by defendants to personally enrich themselves, as we discussed in O'Keefe II. Id. at 7-8.

All other pending motions to this appeal as dismissed as moot.

AFFIRMED.