Anthony Alexander CAMPBELL,
Petitioner–Appellant,

v.

Bert RICE, Warden, Respondent–
Appellee.

No. 99–17311.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2001

Filed Sept. 12, 2001

Walter F. Brown, Jr., Thelen, Reid & Priest, San Francisco, California, for the petitioner-appellant.

John Vance, State Deputy Attorney General, San Francisco, California, for the respondent-appellee.

Before: PREGERSON, FERGUSON, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge:

Anthony Alexander Campbell ("Campbell") appeals from the denial of his 28 U.S.C. § 2254 habeas petition. In his petition, Campbell challenges the constitutionality of his state court convictions for eighteen counts of first-degree burglary and one count of attempted burglary on the grounds that he was deprived of the effective assistance of counsel. Specifically, Campbell asserts that, at the time of his trial, defense counsel suffered from a conflict of interest because she was facing her own criminal prosecution on a felony drug charge by the same district attorney's office.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We conclude

that Campbell's attorney suffered from a potentially serious conflict of interest that was brought to the attention of the trial judge, who failed to make an inquiry into the conflict. Under these circumstances, the conviction cannot stand. *Holloway v. Arkansas*, 435 U.S. 475, 488–89, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). We therefore reverse the district court's denial of Campbell's habeas petition and remand with instructions to grant the writ.

## I.

## FACTS and PROCEDURAL HISTORY

On May 26, 1995, Linda Scharback looked out her window and saw a man trying to open the door to her house. Scharback recognized the man from a composite picture of a burglary suspect that had been circulated in her neighborhood. She called 911. When police officers Kevin Rego and Leon Mosse arrived at Scharback's home, they found Campbell in the backyard and arrested him. Following the arrest, the officers obtained Campbell's consent to search his car. The search revealed several pieces of jewelry and a briefcase that contained more jewelry and other personal property.

The police subsequently obtained Campbell's wife's consent to search their home. During the search of the Campbells' apartment, the police recovered 239 items, which were later found to belong to various people who had reported those items missing after their homes were burglarized.

The Santa Clara County District Attorney's Office charged Campbell with multiple counts of first-degree burglary, in violation of California Penal Code §§ 459 and 460, and several counts of attempted burglary, in violation of California Penal Code §§ 459 and 664. Campbell retained Maureen McCann ("McCann") as defense counsel. McCann represented Campbell at his preliminary hearing on December 4, 1995, after which Campbell was held over for trial. The trial was scheduled to begin on February 8, 1996.

On January 9, 1996, one month before Campbell's trial date, McCann herself was arrested for attempting to transport methamphetamine through a metal detector in the San Martin Criminal Court Justice Facility in Santa Clara County. The Santa Clara County District Attorney's Office charged McCann with one count of felony possession of methamphetamine, which is punishable by "by imprisonment in the county jail for a period of not more than one year or in the state prison." CAL. HEALTH & SAFETY CODE § 11377(a).

On February 6, 1996, two days before Campbell's trial was scheduled to begin, McCann was arraigned on the methamphetamine possession charge by a Santa Clara County Deputy District Attorney. The Santa Clara County District Attorney's Office continued to prosecute McCann throughout the course of Campbell's trial.[1]

On February 8, 1996, the first day of Campbell's trial, the court met in chambers with McCann and Santa Clara County Deputy District Attorney Ralph Dixon, who was prosecuting Campbell. Campbell was neither present at the conference nor informed of it. The trial judge explained

---

1. On March 15, 1996, approximately three weeks after Campbell was convicted, McCann's preliminary hearing was held in Santa Clara County Municipal Court. At the hearing, the deputy district attorney informed the court that, although his office had originally offered McCann diversion, he was re-

voking the offer because McCann was "not eligible for diversion." McCann's lawyer then explained that McCann had been on probation in San Diego for another offense, and that her probation had been revoked for "possibly failing to finish a drinking and driving program some six years ago."

that the conference was taking place because "Mr. Dixon has something he wishes to put on the record with respect to Ms. McCann."

Dixon then informed the trial judge that the Santa Clara County District Attorney's Office was prosecuting McCann on unspecified charges. Dixon noted that Campbell had a constitutional right to a conflict-free attorney. He stated that his office had made McCann an offer regarding her own criminal prosecution that was "neither more lenient nor more severe than that any other defendant would be offered if they were eligible" and that "she has not nor will she receive favorable treatment from our office for any reason."

The following conversation then took place:

THE COURT: Do you wish to make any statement at this time, Ms. McCann?

MS. McCANN: No, that's fine.

THE COURT: Very well.

MR. DIXON: And the Court has determined that this is sufficient.

THE COURT: The Court has determined there is no conflict of interest with respect to Ms. McCann as against her relationship with the district attorney in this case of People vs. Campbell.

MR. DIXON: Thank you, Your Honor.

THE COURT: Thank you.

The conference ended at this point, and the trial went forward.

On February 23, 1996, the jury found Campbell guilty of eighteen counts of first-degree burglary and one count of attempted burglary. Approximately one month later, the trial judge sentenced Campbell to an aggregate term of fourteen years in prison. On January 7, 1997, Campbell filed his direct appeal with the California Court of Appeal for the Sixth Appellate District. On August 9, 1997, Campbell filed a state habeas petition in the same court. The California Court of Appeal denied Campbell's direct appeal and his state habeas petition in an unpublished decision on December 15, 1997. Campbell appealed to the California Supreme Court, which denied review of both matters on April 1, 1998.

Campbell filed a § 2254 habeas petition in the United States District Court for the Northern District of California on August 25, 1998. The petition was denied on September 24, 1999. Campbell timely appeals.

## II.

### STANDARD OF REVIEW

We review de novo the district court's denial of a § 2254 petition. *Hoffman v. Arave*, 236 F.3d 523, 529 (9th Cir.2001). Our review of Campbell's § 2254 petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996); *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA provides, in relevant part, that a prisoner in state custody is not entitled to habeas relief unless the claimed constitutional error "resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

## III.

### THE TRIAL COURT'S FAILURE TO INQUIRE INTO DEFENSE COUNSEL'S CONFLICT OF INTEREST DEPRIVED CAMPBELL OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

#### A. The Right to Conflict–Free Counsel

The Sixth Amendment guarantees a criminal defendant "the right ... to have

the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel includes the right to an effective attorney who can represent his client competently and without conflicting interests. *Garcia v. Bunnell,* 33 F.3d 1193, 1195 (9th Cir.1994). In *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Supreme Court held that:

> [T]he 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired.

■ Competent, conflict-free defense counsel is vital to preserving a criminal defendant's right to a fair trial. *United States v. DeFalco,* 644 F.2d 132, 136 (3d Cir.1979) (en banc) ("The essence of the system is that there be professional antagonists in the legal forum.... Therefore, if any circumstance impedes the unqualified participation by an attorney, the adjudicatory function is inhibited, ultimately threatening the object of that function, justice in the cause at hand."). If defense counsel is prevented by a conflict of interest from "assert[ing] his client's contentions without fear or favor," *id.,* the integrity of adversary system is cast into doubt because counsel cannot "play[ ] the role necessary to ensure that the trial is fair." *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ A conflict of interest can arise in one of two ways: the attorney is representing multiple defendants whose interests are hostile to one another, *Holloway,* 435 U.S. at 481–84, 98 S.Ct. 1173; or the attorney is representing a defendant with interests hostile to the attorney's own interests, *Mannhalt v. Reed,* 847 F.2d 576,

579–80 (9th Cir.1988). In either conflict situation, determining whether a constitutional violation occurred and whether reversal of the defendant's conviction is required involves a two-factor analysis. First, did the trial court have reason to know of the conflict? Second, if the trial court was on notice that a potential conflict of interest existed, did the trial court conduct an appropriate inquiry into the conflict?

■ Where counsel suffers from a potential conflict of interest but defense counsel did not disclose the conflict and the court had no independent reason to know of it, the court is not on notice and has no duty to inquire. *Cuyler v. Sullivan,* 446 U.S. 335, 346–48, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A defendant seeking to prove that he was deprived of the effective assistance of counsel under these circumstances must show that an actual conflict of interest existed and that it had an "adverse effect" on his lawyer's performance. *Id.* at 348, 100 S.Ct. 1708. Although "adverse effect" is a less onerous showing than "prejudice," *cf. Strickland,* 499 U.S. at 691, 111 S.Ct. 1547 (holding that defendant must show prejudice to prevail on ineffectiveness claim based on counsel's incompetence), the defendant is still required to show that the conflict "likely" had some impact on counsel's performance at trial. *United States v. Mett,* 65 F.3d 1531, 1535 (9th Cir.1995) (citation omitted).

■ By contrast, when counsel's potential conflict of interest is brought to the court's attention, the trial judge is on notice and must "take adequate steps" to protect the defendant's rights. *Holloway,* 435 U.S. at 484–85, 98 S.Ct. 1173. To properly perform this duty, the trial judge must make an inquiry into the potential conflict. *Glasser,* 315 U.S. at 71, 62 S.Ct.

457; *see also Smith v. Anderson*, 689 F.2d 59, 63 (6th Cir.1982) ("In the realm of the Sixth Amendment, when an objection to [a conflict of interest] is properly raised and dismissed without a searching review . . . a constitutional violation occurs.") (citations omitted). If the court determines that an actual conflict of interest exists, it must obtain the defendant's knowing and intelligent waiver to the conflict or provide the defendant with the opportunity "to seek new counsel." *United States v. Allen*, 831 F.2d 1487, 1495–96 (9th Cir.1987); *Ciak v. United States*, 59 F.3d 296, 305 & n. 5 (2d Cir.1995).

## B. *Holloway v. Arkansas:* The Automatic Reversal Rule

■ Where the trial court is on notice that a potential conflict of interest exists and instructs the parties to proceed to trial without making an inquiry, the court has failed to protect the defendant's essential rights to counsel and to a fair trial. As a result, the legal process is "contaminated," *Satterwhite v. Texas*, 486 U.S. 249, 257, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), and the defendant's conviction is reversed automatically. *Id.* at 256, 108 S.Ct. 1792.

The Supreme Court announced the "automatic reversal" rule in *Holloway*, 435 U.S. at 488, 98 S.Ct. 1173, which involved a conflict of interest that arose when one attorney represented three co-defendants in a rape and robbery trial. *Id.* at 477, 98 S.Ct. 1173. Defense counsel repeatedly asked the trial judge to appoint a separate attorney for each co-defendant, explaining that, because all of the defendants wanted to testify, he could not examine or cross-examine any one of them without implicating the others. *Id.* at 477–80, 98 S.Ct. 1173. Despite these representations, the court declined to appoint separate counsel. *Id.*

Invalidating the convictions on appeal, the Supreme Court held that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic." *Id.* at 488, 98 S.Ct. 1173. Explaining the basis for the automatic reversal rule, the Court stated:

[I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.

*Id.* at 490, 98 S.Ct. 1173 (emphasis in original).

The Supreme Court has affirmed *Holloway's* automatic reversal rule in subsequent cases. *Satterwhite*, 486 U.S. at 256, 108 S.Ct. 1792 (citing *Holloway* for the proposition that "Sixth Amendment violations that pervade the entire proceeding" are never harmless) *Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708 (holding that where trial court knows of conflict and fails to conduct an inquiry, the reviewing court can assume that the conflict "resulted in ineffective assistance of counsel"); *Wood v. Georgia*, 450 U.S. 261, 273 n. 18, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (stating that Supreme Court case law "*mandates* a re-

versal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists' ") (citation omitted) (emphasis in original).

## C. McCann's Conflict of Interest and the Denial of the Right to the Effective Assistance of Counsel

Campbell argues he is entitled to the automatic reversal of his conviction because the trial court failed to inquire into McCann's conflict of interest and to obtain Campbell's waiver of the conflict or to provide Campbell with the opportunity to obtain new counsel. To prevail on this argument, Campbell must show that the trial judge was on notice of counsel's potential conflict of interest and failed to conduct a proper inquiry.

**2.** The conflict of interest issue was brought to the court's attention by the prosecutor. We note, however, that it was McCann who had the responsibility to alert the court to the conflict of interest. Because defense counsel is "in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop," defense attorneys "have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem." *Holloway*, 435 U.S. at 485–86, 98 S.Ct. 1173 (citations omitted). McCann was also ethically obligated to discuss the conflict of interest with her client. *United States v. McLain*, 823 F.2d 1457, 1464 (11th Cir.1987), *overruled on other grounds by United States v. Watson*, 866 F.2d 381, 385 n. 3 (11th Cir.1989) (defense attorney's ethical obligation to disclose conflict of interest extends to the client). By not advising the court or her client that she suffered from a conflict of interest, McCann breached her ethical duty of candor to the court, as well as her ethical duties of loyalty and competence to her client.

**3.** In *Cuyler*, the Supreme Court stated that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's perfor-

### 1. Notice of Conflict

■■■■ A court must make an inquiry whenever it knows or reasonably should know that a potential conflict of interest exists. *Wood*, 450 U.S. at 272, 101 S.Ct. 1097; *Allen*, 831 F.2d at 1496. In this case, the prosecutor asked the trial judge to hold a conference in chambers specifically to discuss the conflict of interest issue and the trial judge agreed.[2]

■■■ Once Dixon announced at the conference that his office was prosecuting McCann, the conflict of interest issue was plainly presented.[3] A conflict of interest exists "if a defense attorney owes duties to a party whose interests are adverse to those of the defendant." *Allen*, 831 F.2d at 1496 (citing *Zuck v. Alabama*, 588 F.2d 436, 439 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979)).

mance." 446 U.S. at 348, 100 S.Ct. 1708. In this case, however, Campbell's failure to object to the conflict of interest is easily explained: he had no idea that it existed. For this reason, a ruling that Campbell's failure to timely object precludes the application of the automatic reversal rule would deny Campbell relief for failing to object to an issue he knew nothing about.

Moreover, such a ruling would not be justified by the timely objection requirement itself. The purpose of the timely objection requirement is to put the trial court *on notice* of the potential conflict. *Wheat v. United States*, 486 U.S. 153, 161, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (citing *Glasser* and *Holloway* for the proposition that "trial courts, when alerted *by objection from one of the parties*, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment") (emphasis added). In this case, the trial court was informed by the deputy district attorney that defense counsel was being prosecuted by his office. This disclosure was sufficient to trigger the court's duty to inquire, thereby stripping any significance from Campbell's inability to raise the objection himself. *Wood*, 450 U.S. at 272, 101 S.Ct. 1097.

Here, the "party" with adverse interests was defense counsel herself.

Based on the representations of the prosecutor, the state trial judge knew that McCann was being prosecuted by the Santa Clara County District Attorney's Office at the same time that her client was being prosecuted by the Santa Clara County District Attorney's Office. The prosecutor's disclosure of this information was sufficient to "demonstrate [ ] the *possibility* of a conflict of interest ... [and] to impose upon the court a duty to inquire further." *Wood,* 450 U.S. at 272, 101 S.Ct. 1097 (emphasis in original).

The district court discounted the fact that the state trial judge was aware that McCann and her client were both facing prosecution by the Santa Clara County District Attorney's Office. Specifically, the district court found that the state trial judge had no duty to inquire because "the alleged conflict was merely a theoretical one and one unlikely to ever develop, given the prosecutor's representation" that his office would not offer McCann special treatment.

██ We disagree. The potential for a conflict of interest is not measured by the representations of the prosecutor, but by the unique perspective and subjective beliefs of defense counsel. *Holloway,* 435 U.S. at 485, 98 S.Ct. 1173 ("An attorney 'representing [conflicting interests] in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'") (citation omitted). We do not doubt that the prosecutor's assurances of neutrality were made in good faith. But the question is whether McCann was able to accept those assurances, put aside her fears, and advocate for her client uninfluenced by the district attorney's power over her future. Thus, to reject Campbell's claim that McCann suffered from a conflict of interest, we must find that McCann put aside the "adverse interests" in her liberty and livelihood for the sake of her client. Case law and common sense preclude this conclusion.

██ As a criminal defendant, McCann had an interest in maintaining a cordial and cooperative relationship with the prosecution with a view to arriving at a favorable disposition in her case. As a criminal defense attorney, McCann had a duty to maintain an adversarial relationship with the prosecution to vigorously represent her client.[4] The "inherent psychological

4. It is important to note that the facts of this case are distinguishable from the facts of our decision in *United States v. Baker,* 256 F.3d 855 (9th Cir.2001). The defendant in *Baker* sought relief from his federal court conviction based on the fact that he had been represented, on appeal, by an attorney who was himself being prosecuted for a felony in federal court. *Id.* at 857–58. As in this case, defense counsel in *Baker* did not disclose to the appellate court or to his client that he was facing criminal prosecution. But *Baker* is distinguishable from this case in several important respects. First, in Baker's case, the appellate court was not informed by another source that defense counsel was facing prosecution. Second, Baker's attorney was being prosecuted by the United States Attorney's Office in *New York;* while Baker himself had been

prosecuted by the United States Attorney's Office in *California. Id.* at 858. In ruling that the defendant had not demonstrated a conflict of interest, we relied on the fact that the defendant had failed to show the existence of any meaningful relationship between the two prosecutions, which had been undertaken by separate offices. Specifically, we stated that:

There is no indication in the record of any connection between any of the parties involved in the two matters, any relation between the charges or underlying activities at issue, or any other link between [defense counsel's] cooperation, plea, and sentence in New York and his representation of Baker in Los Angeles—or, for that matter, any suggestion that authorities in either jurisdiction were even aware of proceedings in

barriers" arising out of McCann's conflicting obligations arguably made effective representation impossible. *DeFalco*, 644 F.2d at 137 (holding that when counsel is being prosecuted by the same United States Attorney's Office that is prosecuting his client, counsel cannot represent his client's interests effectively); *United States v. McLain*, 823 F.2d 1457, 1464 (11th Cir.1987) (finding that actual conflict of interest existed where defense counsel was under indictment by same United States Attorney's Office that was prosecuting defendant), *reversed on other grounds by United States v. Watson*, 866 F.2d 381, 385 n. 3 (11th Cir.1989).

We conclude that McCann was caught between the rock of her legal obligation to zealously defend Campbell and the hard place of her instinctive desire to "save [her]self." *McLain*, 823 F.2d at 1464. The trial court's knowledge of McCann's predicament triggered a duty "to inquire further." *Wood*, 450 U.S. at 272, 101 S.Ct. 1097.

### 2. The Duty to Inquire

The Supreme Court has held that "[u]pon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused." *Glasser*, 315 U.S. at 71, 62 S.Ct. 457. Integral to protecting these "essential rights" is the court's responsibility to ensure that defense counsel is unimpeded by a conflict of interest that jeopardizes her "paramount" duty of undivided loyalty to her client and prevents her from "competing vigorously with the government." *DeFalco*, 644 F.2d at 136.

 If the court is on notice that such a conflict may exist, the court must

make an inquiry that is both "searching," *Garcia*, 33 F.3d at 1197, and "targeted at the conflict issue." *Selsor v. Kaiser*, 81 F.3d 1492, 1501 (10th Cir.1996). In this case, the inquiry was neither. The trial judge did not ask McCann any questions concerning her ability to represent Campbell effectively while engaging in plea negotiations on her own behalf and facing the possibility of prosecution by the district attorney. The only question that the court asked McCann was whether she "wish[ed] to make any statement at this time." When McCann declined to make a statement, the trial judge terminated the inquiry.

On the basis of this record, we cannot conclude that the court explored the conflict of interest issue with the thoroughness and specificity required by *Glasser* and *Holloway*. The trial court's single, open-ended question to defense counsel was not an inquiry into a conflict of interest. Because McCann declined to make any statement, the trial judge had to rely solely on the representations of the prosecutor that McCann would receive no "special favors" in concluding that there was no possibility of a conflict of interest. But the prosecutor's representations, though ostensibly made in good faith, are beside the point. Once the prosecutor disclosed that his office was prosecuting McCann, the trial judge had a duty to question her closely about her ability to wage an effective defense and to inform Campbell "of the risks associated with [McCann's] representation." *Mannhalt*, 847 F.2d at 581; *Holloway*, 435 U.S. at 485–86, 98 S.Ct. 1173.

Moreover, the trial judge's inquiry was inadequate because it did not involve the

---

the other. In other words, Baker points to nothing in the record to show that [defense counsel] was ever in a position of choosing whether to help himself or his client or of

pursuing anything less than a zealous appeal on behalf of his client because of any conflicting personal interest. *Id.* at 858.

party whose interests were most directly affected—the defendant. The trial court was required to advise Campbell of defense counsel's possible serious conflict of interest and provide him with the opportunity to knowingly and intelligently waive the conflict or obtain new counsel. *Glasser*, 315 U.S. at 71, 62 S.Ct. 457 (holding that the trial judge has "the serious and weighty responsibility ... of determining whether there is an intelligent and competent waiver by the accused"); *Holloway*, 435 U.S. at 483 n. 5, 98 S.Ct. 1173 (stating that attorney may continue providing representation only if defendant waives the right to an attorney "unhindered by a conflict of interests"). Because Campbell was never informed of the conflict, Campbell could neither assert his objections to McCann's continued representation or waive his right to conflict-free counsel.

For these reasons, we conclude that the state trial judge's inquiry was insufficiently searching and specific. *Selsor*, 81 F.3d at 1503 (rejecting lower court's "narrow

reasoning," which deemed "adequate" the state trial judge's cursory inquiry into defense counsel's conflict of interest, because it transformed the inquiry mandated by *Holloway* into "an empty ritual"). Because this inquiry was vital to protecting Campbell's Sixth Amendment right to counsel, we further find that the trial court's error resulted in a constitutional violation.[5]

## IV.

### THE STATE COURT'S DECISION THAT CAMPBELL WAS NOT ENTITLED TO A REVERSAL OF HIS CONVICTION BECAUSE OF DEFENSE COUNSEL'S CONFLICT OF INTEREST IS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW .

 Because AEDPA governs our review of this petition, we must make one further inquiry before determining wheth-

---

5. In reaching this conclusion, we reject the Fourth Circuit's holding in *Mickens v. Taylor*, 240 F.3d 348, 363–64 (4th Cir.2001), *cert. granted*, —— U.S. ——, 121 S.Ct. 1651, 149 L.Ed.2d 467 (U.S. Apr. 16, 2001) (No. 00–9285).

In *Mickens*, a capital murder case, the defendant's trial counsel had been the murder victim's attorney at the time of the victim's death. *Id.* at 353–54. The trial judge was on notice of this fact because she was "the same judge who handled the dismissal" of the case against the murder victim. *Id.* at 354. The trial judge did not, however, inquire into the possible conflict of interest. *Id.* Moreover, defense counsel did not tell the defendant that he had previously represented the victim, thus precluding the defendant from making an objection. *Id.* Denying habeas relief, the Fourth Circuit held that "the rule of *Holloway* should not apply in a case such as this where there has been no showing of any hindrance of the defense and no objection by the defense to the conflict." *Id.* at 357.

We reject this holding for two reasons. First, the application of the *Holloway* reversal

rule does not hinge on whether there has been a showing of "any hindrance" to the defense. Quite the opposite. The *Holloway* per se reversal rule exists precisely because, in conflict of interest cases where no inquiry is made, the "hindrance" is incapable of measurement: "the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing." *Holloway*, 435 U.S. at 490, 98 S.Ct. 1173 (emphasis in original). Second, the fact that the objection to the conflict was raised by the defense is of no consequence when (1) defense counsel unethically hid the conflict from the defendant, thereby precluding the objection; and (2) the trial court knew of the conflict from another source. We decline to adopt a holding that penalizes the defendant for the unethical conduct of his attorney. We agree with the dissenters in *Mickens* that, regardless of the fact that the trial judge learned of the defense counsel's conflict of interest from a source other than the defense, the trial judge was on notice of the conflict, had a duty to inquire into the conflict, and "did nothing." 240 F.3d at 366 (Michael, J., dissenting).

er Campbell is entitled to habeas relief. We must ask whether the California Court of Appeal's conclusion that Campbell is not entitled to a reversal of his conviction "resulted in a decision that was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (stating the standard of review under AEDPA).

The Supreme Court interpreted the "clearly established" and "contrary to" clauses of AEDPA in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Supreme Court explained that a state court decision applies "clearly established" Supreme Court law under AEDPA when it "applies a rule dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final." *Id.* at 381, 120 S.Ct. 1495 (citation omitted).[6] *Holloway* was decided by the Supreme Court in 1978; Campbell's conviction became final on appeal in 1997. Thus, *Holloway's* holding that a criminal defendant is entitled to the automatic reversal of his conviction when the trial court fails to inquire into the possibility of a conflict of interest is clearly established United States Supreme Court law for AEDPA purposes. *Lockhart v. Terhune*, 250 F.3d 1223, 1231 (9th Cir.2001) (citing *Holloway* as clearly established federal law for AEDPA purposes).

■■■ Interpreting AEDPA's "contrary to" clause, the Supreme Court held that "[a] state court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in

our cases." *Williams*, 529 U.S. at 405, 120 S.Ct. 1495. By contrast, "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit" within AEDPA's "contrary to" clause. *Id.* at 406, 120 S.Ct. 1495.

Under *Williams*, we must discern "the correct legal rule" according to clearly established Supreme Court law and then look to see if the state appellate court applied that rule in Campbell's case. The facts in Campbell's case show that defense counsel suffered from a potential conflict of interest of which the trial court was aware. In this situation, if the trial judge fails to inquire into the conflict of interest, we must apply the rule set announced by the Supreme Court in *Holloway*, 435 U.S. at 488, 98 S.Ct. 1173, and reverse the defendant's conviction automatically. Because the state trial judge did not see to it that Campbell was advised of his counsel's conflict of interest and provided an opportunity to give a knowing and intelligent waiver or to seek new counsel, we conclude that *Holloway's* automatic reversal rule applies.

The California Court of Appeal did not apply the *Holloway* "automatic reversal" standard to the facts of Campbell's case. Instead, the appellate court concluded that "[e]ven assuming arguendo that the trial court erred in failing to follow the inquiry and waiver procedures ... such error would not lead to automatic reversal." The court went on to hold that Campbell was not entitled to relief unless he could show that counsel's conflict of interest ad-

---

**6.** In arriving at this standard, the Supreme Court held that AEDPA "codifies" the definition of "clearly established" that was announced by the Court in *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Williams*, 529 U.S. at 380, 120 S.Ct. 1495. Under *Teague*, and now, by ex-

tension under AEDPA, "clearly established federal law" is equivalent to an "old rule" i.e., a rule that breaks *no* new ground and imposes *no* new obligation on the states, provided that the rule was announced by the United States Supreme Court. *Id.* at 379–80.

versely affected her performance at trial. By applying the "adverse effect" standard to the facts of Campbell's case instead of the "correct legal rule" set forth in *Holloway,* the California Court of Appeal rendered a decision that was "contrary to" clearly established United States Supreme Court law. For that reason, we conclude that Campbell is entitled to relief under AEDPA.

## CONCLUSION

We hold that the trial court's failure to inquire into defense counsel's potential conflict of interest deprived Campbell of his constitutional right to the effective assistance of counsel. Under *Holloway,* the absence of a meaningful inquiry by the trial court resulted in structural error; i.e., error falling within a class of "constitutional violations [that] by their very nature *cast so much doubt on the fairness of the trial process* that, as a matter of law, they can never be considered harmless." *Satterwhite,* 486 U.S, at 250, 108 S.Ct. 1792 (emphasis added). Finally, because the California Court of Appeal did not apply the Supreme Court's decision in *Holloway,* its decision denying Campbell relief was "contrary to . . . clearly established Federal law" under AEDPA. We therefore reverse the district court's denial of Campbell's habeas petition and remand to the district court with instructions to grant the writ, requiring that the state of California bring Campbell to trial again within a reasonable amount of time or release him from custody.

**REVERSED and REMANDED.**