IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40195 and No. 94-40196
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WARREN N. MOORE and THOMAS L. ARNOLD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Western District of Louisiana
_____

(October 24, 1994)

Before, SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Warren N. Moore (Moore), and Thomas L. Arnold (Arnold) pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. Moore and Arnold moved to withdraw their guilty plea, which the district judge denied. The district judge also denied Moore and Arnold's motion for reconsideration of the plea-withdrawal motion. Each defendant received a five year term of probation and a $50,000 fine. The defendants raise identical arguments in this consolidated appeal, challenging their convictions and fines. We affirm the convictions, vacate the sentences, and remand for resentencing.

1

FACTS

On September 29, 1992, the defendants pleaded guilty to Count 12 of a fourteen count bill of information, pursuant to a written plea agreement with the government. A written factual basis for the plea was filed into the record. It provided in pertinent part:

In 1986, defendants, d/b/a A Associates, Inc., purchased a tract of land in Caddo Parish, Louisiana, from Phillip and Daniel Henderson and developed it into a mobile home subdivision named Colworth Place. Defendants gave a first mortgage on the property to the Hendersons, but failed to tell mobile home lot purchasers Donald and Sheila Rogers of the outstanding first mortgage.

In September 1990, mobile home lot purchasers Donald and Sheila Rogers, without notice of the outstanding first mortgage, sent their $132.02 mortgage payment by U.S. mail to defendants at P. O. Box 8431, Shreveport, Louisiana.

Defendants intended to have the Rogers believe that when the mortgage was paid to defendants, the Rogers owned the property outright, i.e., the Rogers were unaware that their mobile home lot was still encumbered by the first mortgage to the Hendersons.

The pleadings and exhibits filed by the parties concerning the motion to withdraw the guilty pleas fleshed out the facts and circumstances surrounding the mail fraud charges. Defendants characterize Colworth Place as a low-income housing development, where purchasers could move in with a $500.00 down payment. The Rogers, as well as the other purchasers, were not represented during the purchase of the property or at closing. Defendants provided a warranty deed to the Rogers at closing which made no mention of an outstanding mortgage on the property. The Rogers signed the document at closing, but defendants did not. When the Rogers received their certified copy of that warranty deed from the

Caddo Parish clerk, language regarding the outstanding mortgage had been added to the deed, without the knowledge or consent of the purchasers.

The Credit Sale Deed that memorialized the mortgage from defendants to the Hendersons was recorded in the public records of Caddo Parish, which would have allowed purchasers to discover the mortgage had they searched the public record before purchasing the property. Further, there is no evidence that defendants affirmatively misrepresented to the Rogers that they held title to the property free of mortgages.

The defendants later traded the Rogers' note, along with the notes of approximately nine other mobile home lot owners, to the president of a bank. That individual pledged the notes to secure his own indebtedness to the bank, and when the bank failed the lot purchasers' notes were obtained by the FDIC. The note to the Hendersons was not kept current during this time, and foreclosure procedures were initiated against the lot purchasers.

### DO THE FACTS CONSTITUTE A FEDERAL OFFENSE?

Appellants' first point of error alleges that the district court erred in denying their motions to withdraw their guilty pleas because there was no factual basis to support a conviction for mail fraud. A district court may permit a defendant to withdraw a guilty plea at any time prior to sentencing upon a showing of a "fair and just" reason. FED. R. CRIM. P. 32(d). However, Rule 32 does not provide an absolute right to withdraw a plea. The defendant has the burden of proving that withdrawal is justified,

and we will reverse the district court's determination only upon concluding that it has abused its discretion. *United States v. Daniel*, 866 F.2d 749 (5th Cir. 1989).

A district court must consider several factors in ruling on a motion to withdraw a plea:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988). Defendants claim only that the Government's proof did not establish the *mens rea* required for conviction of the charged offense, asserting innocence under the first factor. Because this claim fails and no other factors are addressed by the appellants, we find no merit in this point of error.

The federal mail fraud statute under which appellants were charged, 18 U.S.C. § 1341, requires proof of a knowing and willful scheme or artifice to defraud another of property or money and a subsequent mailing to execute the purpose of the scheme. Appellants allege that there was a complete lack of evidence to establish the mental element, the essence of which is fraud and deceit. The record does not bear out the defendants' position. Both defendants signed the written factual basis filed with the court and testified at the plea hearing that they had read it and agreed that it accurately reflected what had occurred. The factual

4

basis states that the defendants "intended to have the Rogers believe that when the mortgage was paid to the defendants, the Rogers owned the property outright, i.e., the Rogers were unaware that their mobile home lot was still encumbered by the first mortgage to the Hendersons."

In a related argument, Moore and Arnold assert that they had no duty to disclose the existence of a prior mortgage under Louisiana law. Because the first mortgage was recorded in the public records of Caddo Parish, and the defendants did not affirmatively misrepresent its existence, defendants contend that the Rogers had constructive knowledge of the mortgage, citing *Thomas v. Lewis*, 475 So. 2d 52 (La. App. 2nd Cir. 1985). Therefore, they reason, their conduct could not constitute mail fraud under federal law. They contend that the information failed to allege a criminal offense and that the factual basis to which they admitted likewise established no crime.

"The federal mail fraud statute prohibits use of postal services in the furtherance of fraudulent schemes, whether or not prohibited by state law." *United States v. Foshee*, 606 F.2d 111, 113 (5th Cir. 1979). Defendants contention that they had no duty under Louisiana law to disclose the first mortgage to the Rogers is therefore irrelevant to the question before this Court. The evidence before the court at the plea hearing established that defendants intended to deceive the Rogers concerning the existence of the mortgage, and thereby to induce them to buy real estate they might not otherwise have purchased.

5

We therefore hold that the district court did not abuse its discretion in denying defendants' motion to withdraw their guilty pleas.

WAIVER OF INDICTMENT

Moore and Arnold contend that the district judge did not personally advise them of their rights before accepting their waiver of indictment and that the record does not demonstrate that they waived indictment in open court. They assert that their waivers of indictment are therefore invalid.

> An offense which may be punished by imprisonment for a term exceeding one year or at hard labor may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of the rights of the defendant, waives in open court prosecution by indictment.

FED. R. CRIM. P. 7(b). Mail fraud, the offense to which Moore and Arnold pleaded guilty, carries a maximum five-year term of imprisonment. 18 U.S.C. § 1341. Their waiver of indictment is therefore governed by Rule 7(b).

> Unless there is a valid waiver, the lack of an indictment in a federal felony case is a defect going to the jurisdiction of the court. Rule 7(b) provides the waiver must be made in open court after the defendant has been advised of the nature of the charge and his rights. The court must be satisfied the waiver was knowingly, understandingly, and voluntarily made. A waiver of indictment, being merely a waiver of a finding of probable cause by a grand jury, is of relatively less consequence as compared with a waiver of trial, and thus does not call for all of the protections surrounding entry of guilty pleas.

*United States v. Montgomery*, 628 F.2d 414, 416 (5th Cir. 1980) (internal quotations and citations omitted). The Fifth Circuit has never prescribed a particular procedure that must be followed to

6

comply with Rule 7(b) requirements.

The record indicates that when court opened on September 29, 1992 for plea hearing some documents were being signed. The prosecutor then tendered to the court the original signed waiver of indictment, along with the affidavit of understanding of maximum penalty and constitutional rights.

The court inquired of the parties, "No objection to the filings?"

Defendants' counsel responded, "No objection."

Defendants raise no complaints about the form or content of their written waivers of indictment. The question before us is whether or not the procedure followed by the district court complied with the requirement that waiver be made in open court after the defendants are informed of the nature of the charge and their rights. We hold that it did. Although the record is ambiguous concerning whether the defendants signed the waiver before or after court began, the document was filed in open court, and the court specifically asked if the defendants had any objection to the filing, which they did not. Further, the document itself recites that the indictment was waived in open court on September 29, 1992. Defendants' acquiescence in the filing of their signed waiver amounted to a waiver of indictment in open court. Rule 7(b) requires that the defendants be informed of the nature of the charge and their rights, but does not impose on the *court* an obligation to do anything. A defendant's waiver of indictment must of course be knowing and voluntary. But there is

7

no reason why the requisite advice cannot come from defense counsel, as it did in this case. *See United States v. Liboro*, 10 F.3d 861 (D.C.Cir. 1993). The affidavit of understanding of maximum penalty and constitutional rights along with the written factual basis, signed by Moore and Arnold and filed with the court, establish that the appellants were informed of the nature of the charge and their rights in accordance with Rule 7(b).

## CONFLICT-FREE COUNSEL

Moore and Arnold were represented by the same attorney. At the beginning of the plea hearing the court inquired whether the situation amounted to a conflict of interest. The prosecutor responded that the question had been discussed with the defendants and the defense counsel and that there was no conflict. The court addressed the defendants, explaining that it is possible that their attorney could have a conflict of interest, and advised the defendants that they were entitled to waive their right to conflict-free counsel if they chose. Both defendants told the judge that they wanted to waive that right. Defendants now contend that the trial judge's explanation and inquiry was not sufficient to establish that they knowingly, intelligently and voluntarily waived their right to conflict-free counsel.

We review the district court's acceptance of defendants' waiver of conflict-free counsel for simple error. *United States v. Snyder*, 707 F.2d 139, 144 (5th Cir. 1983).

Under the Sixth Amendment, the right to counsel includes the right to conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261,

8

271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981).  A conflict exists when defense counsel places himself in a position conducive to divided loyalties.  *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985).

*United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), sets out instructions for district courts to follow in determining whether a defendant has knowingly, intelligently, and voluntarily waived his right to a conflict free attorney:

> [W]e instruct the district court to follow a procedure akin to that promulgated in F. R. CRIM. P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record.  As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation.  Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections...Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.  (Internal citations omitted.)

The *Garcia* hearing at issue was cursory, falling short of the ideal of eliciting a narrative response from each defendant. However, the record clearly establishes that both Moore and Arnold waived their right to a conflict-free attorney, after being adequately informed of the dangers encountered when two

9

codefendants are represented by the same attorney.  The court did not err in accepting the defendants' waiver of conflict-free attorneys.

                              UPWARD DEPARTURE

The district court departed upward from the guideline sentencing range in imposing a $50,000.00 fine on each defendant. Defendants contend that the court erred in failing to give the defendants reasonable notice of the grounds for upward departure, and thereby deprived them of the opportunity to comment on the departure prior to sentencing.  We agree.

FED. R. CRIM. P. 32(a)(1) provides that the parties be given "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence."  The Supreme Court has held that Rule 32 requires that the district court give the parties reasonable notice that it is contemplating an upward departure, which notice must specifically identify the grounds for the departure.  *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991).

The district court, in pronouncing the sentence, stated that the basis for upward departure on the fine was that the defendants preyed on the weak and uneducated as part of their offense.  This basis had not been mentioned previously in the record.  The court stated earlier in the hearing, "As you recall, Mr. Keene, I gave you and your clients notice on November 30 that I was considering an upward departure from the guideline fine range so I would like you to at this time also discuss in addition to what you already

                                   10

told me your comment on the departure upwards." The notice referred to by the court is not memorialized in the record, so that it is impossible to tell if the proposed basis for departure was included in that notice. We hold that the district court erred by failing to give the defendants reasonable notice of the basis for its upward departure on the fines.

## CONCLUSION

Therefore, we AFFIRM the convictions, VACATE the sentences and REMAND the cases for resentencing.

11