**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 00-41041**
**No. 00-41042**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**JUAN GARCIA RODRIGUEZ,**

**Defendant-Appellant.**

---

Appeals from the United States District Court
For the Southern District of Texas

---

January 4, 2002

Before GARWOOD, DeMOSS, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Juan Garcia Rodriguez was charged in two separate indictments for his role in the illegal transporting of aliens. The indictments included charges of conspiracy, transportation of aliens and money laundering. Rodriguez was ultimately sentenced to eighteen months for an alien-transporting charge in the first indictment. After a jury trial for the second indictment, Rodriguez was found guilty on three counts involving money laundering and was sentenced to 80 months' imprisonment to run

concurrent to his 18-month sentence. Rodriguez now appeals, asserting that the evidence was insufficient to convict him of the money-laundering charges, that the district court failed to conduct a proper inquiry into his waiver of conflict-free counsel and that the total offense level in the pre-sentencing report ("PSR") was erroneously based on his income rather than on the actual amount of money laundered.

## BACKGROUND

Beginning in 1996, Juan Garcia Rodriguez ("Rodriguez") was engaged in an operation smuggling undocumented aliens from Mexico to North Texas, primarily to Dallas or Garland, Texas. He would charge the aliens between $1,000 and $1,200 each per trip. Rodriguez also recruited his brother, Juan Antonio Garcia ("Garcia"), to participate in his smuggling operation.

In September 1999, Garcia and Rodriguez's stepson, Juan Garcia Rodriguez ("Juan"), were apprehended at the Sarita, Texas, checkpoint while transporting nine illegal aliens in the back of a 1999 Ford conversion van. Garcia cooperated with the government and identified Rodriguez as the leader of the smuggling operation. As a result of Garcia's cooperation, the government initiated an investigation of Rodriguez and established surveillance at his residence.

On January 21, 2000, Rodriguez was stopped at the United States Border Checkpoint facility south of Falfurrias, Texas, and was arrested. He was accompanied by his 16-year-old daughter and Garcia. Rodriguez was driving a 1997 Chevrolet G-van conversion, the vehicle subject to the charges contained in counts one, seven and nine on appeal before this Court. In the rear of the vehicle, concealed beneath and behind clothing and other materials, were seven undocumented aliens.

Based upon the information supplied by Garcia and other corroborating information, the government obtained a search warrant for Rodriguez's house and executed it on January 21, 2000. The search revealed a number of financial documents and records that formed the basis of the subsequent money laundering charges. The search also revealed cash, multiple vehicles and many personal luxury items. The records obtained were used to establish Rodriguez's yearly expenditures from 1996-2000. These were compared to Rodriguez's recorded annual income. The records revealed that Rodriguez earned a total of $93,103.22 between 1996 and 2000, but spent $368,787.07 for a documented differential of $275,683.85.

The 1997 Chevrolet G-van conversion that Rodriguez was arrested in, and which is the subject of the money laundering counts on appeal, was originally purchased in Garcia's name by Rodriguez. Rodriguez told the salesperson that he had just

3

recently gotten married and that is why the vehicle had to be in Garcia's name. However, it appears that the vehicle was chosen by Rodriguez and that it was Rodriguez who negotiated the price. Furthermore, it was Rodriguez who picked up the car's license plates on October 16, 1997. Rodriguez gave Garcia $18,000 to pay for the van on October 16, 1997. Garcia then paid the remaining balance of the vehicle on November 10, 1997, which amounted to $10,209.42; Garcia testified that he received this amount from Rodriguez. This all occurred during a period in which Rodriguez was depositing and withdrawing large sums of money into and out of his bank account, including an insurance settlement check for $10,884.25. About six months after November 10, 1997, Rodriguez purchased the vehicle back from Garcia for approximately $5,000 to $6,000. The vehicle was in Rodriguez's name as of his arrest on January 21, 2000.

Rodriguez was charged in an 11-count indictment (No. 00-41041 on appeal or "No. '41") involving conspiracy, the transportation of aliens and money laundering in violation of 8 U.S.C. § 1324(a)(1)(A)(i)-(iii), (v)(I)-(II) and 18 U.S.C. § 1956(a)(1) (A)(i). Pursuant to a plea agreement, Rodriguez entered a plea of guilty to one count of transporting aliens and the government agreed to dismiss the conspiracy count but retained the money laundering counts. The government later moved to also dismiss the money laundering counts, but did so only to include the counts in

4

a subsequent nine-count indictment (No. 00-41042 on appeal or "No. '42") involving money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i), 1957(a). Counts one through four of this subsequent indictment were the same as counts eight through eleven in the previous indictment (No. 41).

Rodriguez was ultimately sentenced in district court before the Honorable Filemon B. Vela to 18 months for the alien transporting charge in the first indictment (No. '41). After a jury trial for the second indictment (No. '42), Rodriguez was found guilty of counts one, seven and nine and sentenced by the Honorable Hilda G. Tagle to 80 months' imprisonment to run concurrent to his 18 month sentence. Count one charged Rodriguez with aiding and abetting the commission of money laundering by purchasing a 1997 Chevrolet G-van with proceeds from the specified unlawful activity of transporting and harboring illegal aliens in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i). Count seven charged Rodriguez with engaging in financial transactions with proceeds from unlawful activity under 8 U.S.C. § 1324 involving $10,209.42 for the purchase of the 1997 Chevy G-van in violation of 18 U.S.C. §§ 2, 1957(a). Count nine charged him with money laundering by engaging in a financial transaction from proceeds from specified unlawful activity under 8 U.S.C. § 1324 with the intent to conceal the source of the $28,209.42 in proceeds involving the 1997 Chevy G-van in violation of 18 U.S.C. §§ 2, 1956(a)(1)(B)(i). Rodriguez now

5

appeals his sentence in No.'42, asserting that the evidence was insufficient to convict him of the money laundering charges, that the district court failed to conduct a proper inquiry into his waiver of conflict-free counsel and that the total offense level in the PSR was erroneously based on his income rather than on the actual amount of money laundered.

## DISCUSSION

<u>Rodriguez's appeal as to the first indictment (No. 00-41041)</u>

The government asserts that the notice of appeal filed by Rodriguez in No. '41 is untimely but concedes that his notice of appeal as to No. '42 is timely. Rodriguez's judgment in No. '41 was pronounced on May 11, 2000 and formally entered on May 19, 2000. Rodriguez's notice of appeal to No. '41 was filed on August 31, 2000. Under FED. R. APP. P. 4(b)(1):

> In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of:
>
> (i) the entry of either the judgment of the order being appealed; or
>
> (ii) the filing of the government's notice of appeal.

The filing of a notice of appeal within the 10-day period prescribed by this rule is mandatory and jurisdictional. *United States v. Robinson*, 361 U.S. 220, 224 (1960)(addressing Rule 4(b)'s predecessor rule). "A timely notice of appeal is necessary to the

6

exercise of appellate jurisdiction." ***United States v. Cooper***, 135 F.3d 960, 961 (5th Cir.1998) (citing ***Robinson***, 361 U.S. at 224). "Simply put, if a notice of appeal is untimely, we cannot entertain the merits of a case." ***United States v. Truesdale***, 211 F.3d 898, 902 (5th Cir. 2000).

Rodriguez does not address the issue of the timeliness of the notice of appeal in No. '41 in his brief and has filed no reply brief as to this issue. Rodriguez also does not raise a single issue from No. '41 on appeal. All of his claims concern errors in his money laundering case, No. '42. As we are left without any explanation as to why we should rule otherwise, Rodriguez's appeal as to No. '41 is dismissed for lack of jurisdiction due to the untimeliness of the notice of appeal under FED. R. APP. P. 4(b)(1)(i).

<u>The sufficiency of the evidence</u>

When reviewing the sufficiency of the evidence in a criminal case, this Court views the evidence, both circumstantial and direct, in the light most favorable to the government with all reasonable inferences to be made in support of the jury's verdict. ***United States v. Moser***, 123 F.3d 813, 819 (5th Cir. 1997). In reviewing the jury's decision, this Court recognizes that the jury is free to choose among all reasonable constructions of the evidence and this Court will accept all credibility choices that tend to support the jury's verdict. ***United States v. Dean***, 59 F.3d

1479, 1484 (5th Cir. 1995). "Moreover, we determine only whether the jury made a rational decision, not whether its verdict was correct on the issue of innocence or guilt." *Id.* (citing **United States v. Jaramillo**, 42 F.3d 920, 923 (5th Cir. 1995)). "However, we must reverse a conviction if the evidence construed in favor of the verdict 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged.'" **Jaramillo**, 42 F.3d at 923 (quoting **United States v. Menesses**, 962 F.2d 420, 426 (5th Cir. 1992)).

Rodriguez claims that the jury had insufficient evidence to come to a guilty verdict on counts seven and nine. Count seven charged Rodriguez with engaging in a financial transaction with proceeds from an unlawful activity under 8 U.S.C. § 1324 in violation of 18 U.S.C. §§ 2, 1957(a). To prove an offense under 18 U.S.C. § 1957(a), the government must prove that (1) property valued at more than $10,000 was derived from a specified unlawful activity (here transporting and harboring undocumented aliens); (2) Rodriguez engaged in a financial transaction with the property (the purchase of the van); and (3) Rodriguez knew that the property was derived from unlawful activity. **United States v. Wilson**, 249 F.3d 366, 379 (5th Cir. 2001). Count nine charges Rodriguez with money laundering by engaging in a financial transaction from proceeds from a specified unlawful activity under 8 U.S.C. § 1324 with the intent to conceal the source of the $28,209.42 in proceeds

8

involving the 1997 Chevy G-van in violation of 18 U.S.C. §§ 2, 1956(a)(1)(B)(i). To prove a violation of § 1956(a)(1)(B)(i), the government must show that the defendant conducted a financial transaction that he knew involved the proceeds of an unlawful activity and that he did so knowing that the transaction was intended to conceal or disguise the nature of the proceeds. *United States v. Powers*, 168 F.3d 741, 747-48 (5th Cir. 1999) (stating that the government "must show that the defendant desired to create the appearance of legitimate wealth or otherwise to conceal the nature of funds so that the money could enter the economy as legitimate funds").

Rodriguez claims that the evidence was insufficient because it did not prove beyond a reasonable doubt that the $10,209.42 that was used to pay the remaining balance on the van on November 10, 1997, involved the proceeds of the specified unlawful activity of transporting and harboring aliens. Rodriguez specifically cites the fact that he deposited a check for $10,884.25 into his bank account on September 15, 1997. He then withdrew $10,700 on September 18, 1997 and he argues he could have used the money he withdrew to purchase a cashier's check for $10,209.42 in November 1997, which was then used to pay the remaining balance on the van. Rodriguez therefore claims that there is no proof that the cashier's check was purchased with the proceeds from an unlawful

9

activity and that he cannot be found guilty under counts seven and nine.

Though Rodriguez offered an alternate legitimate source for the funds used to purchase the van, Rodriguez ignores the fact that the jury was free to discredit Rodriguez's theory that the funds used to acquire the Chevy van were from a legitimate source. *United States v. Restrepo*, 994 F.2d 173, 182 (5th Cir. 1993) ("The jury is the final arbiter of the weight of the evidence, and of the credibility of witnesses"). The jury heard evidence from both sides as to where the money could have come from, including evidence that Rodriguez commingled his funds. Evidence that the defendant commingled illegal proceeds with legitimate business funds is sufficient to support a conviction under § 1956. *United States v. Willey*, 57 F.3d 1374, 1386 (5th Cir. 1995); *United States v. Jackson*, 935 F.2d 832, 840 (7th Cir. 1991). "[I]t is not necessary to prove with regard to any single transaction that the defendant removed all trace of his involvement with the money or that the particular transaction charged is itself highly unusual." *Willey*, 57 F.3d at 1386. The government is under no duty to trace the individual funds and "it is not necessary that a transaction be examined wholly in isolation if the evidence tends to show that it is part of a larger scheme that is designed to conceal illegal proceeds." *Id.*; *Jackson*, 935 F.2d at 840 ("We do not read Congress's use of the word 'involve' as imposing the requirement

10

that the government trace the origin of all funds deposited into a bank account to determine exactly which funds were used for what transaction."). In short, the jury was free to discredit Rodriguez's explanation of the source of the funds and did so. There was no error on the part of the jury and the evidence was sufficient to support this finding.

Defense counsel's potential conflict of interest

Rodriguez also argues that the district court inadequately inquired into a potential conflict of interest by Rodriguez's trial attorney Paul Hajjar. Hajjar represented Juan Garcia Rodriguez (Rodriguez's stepson) in his alien transporting case. Prior to trial, Hajjar filed a "notice of potential conflict" with the court, because apparently Garcia (not Juan Rodriguez) was listed as a potential witness. Hajjar did not allege, however, that he had an actual conflict of interest. At a hearing held on May 19, 2000, the district court inquired whether either party had any intention of calling Juan Rodriguez as a witness. Both Hajjar and the government indicated that they did not intend to call Juan and they both agreed that no actual conflict existed at that time. However, the government still sought a "waiver" from Rodriguez concerning any "potential conflict." Hajjar then discussed the issue with Rodriguez over a brief recess and when he returned, Rodriguez swore under oath that he was aware of Hajjar's prior representation of Juan Rodriguez, aware of the "potential conflict

11

of interest," had discussed the matter with Hajjar and advised that he did not want Hajjar to withdraw from the case. The court agreed that there was no conflict of interest in the case because Juan Rodriguez was not even a potential witness.

"We review the district court's acceptance of defendant's waiver of conflict-free counsel for simple error." *United States v. Moore*, 37 F.3d 169, 174 (5th Cir. 1994). The Sixth Amendment right to counsel includes the right to conflict-free counsel and a conflict exists when the defense counsel places himself in a position conducive to divided loyalties. *Id.* In a situation where the defendant objects to his representation on the basis of a conflict and the trial judge fails to inquire into the merits of the objection, the defendant is entitled to automatic reversal and a new trial. *Holloway v. Arkansas*, 435 U.S. 475, 488-90 (1978). When there is no objection from the defendant but the judge knew or reasonably should have known about an apparent conflict but fails to make an inquiry, then the defendant is only required to show that there was an actual conflict. *Wood v. Garcia*, 450 U.S. 261, 272-74, n.21 (1981). If there is no objection and the conflict is not apparent to the judge, then the defendant must show that an actual conflict existed and that this conflict adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 347-48 (1980). In most cases, it is the defense attorney in a criminal matter who is in the best position, professionally and ethically,

12

to determine when a conflict exists or will probably develop in the course of the trial.  *Holloway*, 435 U.S. at 485.

Though this Circuit has never held that a "notice of potential conflict" is the functional equivalent of an objection, there is some support for the argument that filing such a notice requires the district court to conduct an inquiry into the matter.  *Cf. United States v. Wayman*, 510 F.2d 1020, 1025-26 (5th Cir. 1975) (holding that, in the event of a conflict of interest between co-defendants, where there was neither objection, claim, nor notice to the court of any alleged conflict, there is no need for the trial court to advise the defendant of the right to separate counsel); *see also* **Cambell v. Rice**, 265 F.3d 878, 885 (9th Cir. 2001) (citing **Wood**, 450 U.S. at 272, as supporting that "[a] court must make an inquiry whenever it knows or reasonably should know that a potential conflict of interest exists"); **United States v. Pergler**, 233 F.3d 1005, 1010 (7th Cir. 2000) ("If an attorney brought the potential conflict of interest to the attention of the court, or the court knew or reasonably should have known about the conflict, we will assume prejudice when the judge fails to address the conflict adequately.").  In the present case, after the filing of the "notice of potential conflict," the district court made an inquiry into the matter and even had Rodriguez himself take the stand to testify before he waived his potential conflict claim. The district court, therefore, fulfilled any obligation it may have

13

had arising from the filing of the "notice of potential conflict," and resolved the matter concluding that there was no actual conflict. Rodriguez never objected again after the court determined that no conflict existed. There is no evidence of any actual conflict. We hold that, under a "simple error" standard of review, the district court's acceptance of Rodriguez's waiver of potential conflict was not in error.

The district court's reliance on the PSR's recommendation attributing $275,683.85 to relevant money-laundering conduct

In his final argument on appeal, Rodriguez asserts that his money-laundering sentence must be vacated because the total offense level was erroneously based upon the amount of income he purportedly had earned rather than on the amount of money laundered. A district court's valuation of funds under U.S.S.G. § 2S1.1(b) is a determination of fact and is therefore reviewed for clear error. *United States v. Hull*, 160 F.3d 265, 268 (5th Cir. 1998). Under U.S.S.G. § 2S1.1(b)(2)(C) (2000), a defendant's base level may be increased by 2 levels if the value of the funds laundered exceeds more $200,000. Rodriguez asserts that it was error for the PSR to take into account the amount of money he spent in excess of his reported income, approximately $275,000, instead of just the amount of money laundered by him. Rodriguez believes that the court should be limited to considering the amount that he laundered in the counts he was found guilty of committing.

14

Though it is true that § 2S1.1(b) takes into account the amount laundered, the additional money might also be considered under U.S.S.G. §1B1.3 as relevant conduct.[1]  *See **United States v. Johnson***, 971 F.2d 562, 576 n. 10 (10th Cir. 1992) (noting that funds associated with uncharged instances of money laundering can be added in to determine the offense level if they are within the scope of relevant conduct under §1B1.3).  However, the application notes to §1B1.3 state:

> A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute.  For example, in §2S1.1 (Laundering of Monetary Instruments), subsection (a)(1) applies if the defendant "is convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), (a)(3)(A)." **Unless such an express direction is included, conviction under the statute is not required.**

U.S.S.G. § 1B1.3, application note 6 (1998) (emphasis added).  We read this to mean that unless a defendant is convicted under the money laundering statute, money laundering cannot be used against him as relevant conduct to enhance his sentence.  However, monies relating to a conviction under the money laundering statute may be considered, and a greater amount of money than is charged in the indictment or proven beyond a reasonable doubt could be considered if it relates to the conviction.  In order for the greater amount

---

[1]    Though application of U.S.S.G. § 1B1.3 seems more suited in the present case to instances involving an accomplice or a conspiracy.

15

of money to be considered, the government must prove by a preponderance of the evidence that the money was laundered. *Hull*, 160 F.3d at 269. In the present case, all the government has done is show a discrepancy between the income Rodriguez earned and the value of his total assets. The government has failed to prove that $275,683.85 was laundered or how it was laundered. The government has therefore fallen short of its burden of proof and it was clearly erroneous for the district court to consider the entire $275,683.85 without further proof that it was laundered.[2]

## CONCLUSION

Therefore, having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we hold that the jury had sufficient evidence on which to convict Rodriguez, that the district court did not err in the manner in which it inquired into the potential conflict of interest between Hajjar and Rodriguez, but that the district court did err in considering the additional $275,683.85 included in the PSR when determining Rodriguez's sentence. Therefore, the district court is

---

[2]  As an aside, it may be of interest to note (i) that the 2001 version of the Guidelines makes no distinction between amounts involved in the offense and (ii) that under the current version, Rodriguez would have received the two level increase anyway, even if the lower amount of money was used.

16

AFFIRMED in part, but the sentence of the district court is VACATED, and the case is REMANDED for re-sentencing.

**AFFIRMED** in part, and **VACATED** and **REMANDED**.