

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-2002

# USA v. Basroon

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-1171

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Basroon" (2002). *2002 Decisions.* Paper 314.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/314

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-1171



UNITED STATES OF AMERICA

v.

MARTIN BASROON,

Appellant



ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

(Dist. Court No. 98-cr-444)
District Court Judge: Honorable Katharine S. Hayden


Argued March 4, 2002

Before: ALITO, RENDELL, and HALL, Circuit Judges.

(Opinion Filed: May 30, 2002)
_____

Shalom D. Stone (Argued)
Justine P. Walder
Walder, Sondak & Brogan, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068

Counsel for Appellant

George S. Leone
Elizabeth S. Ferguson (Argued)
Assistant United States Attorney
970 Broad Street
Newark, New Jersey 07102
Counsel for Appellee

OPINION OF THE COURT


PER CURIAM:
                    Background

Defendant/appellant Martin Basroon ("Basroon") was the president of Plaza Mortgage Company ("Plaza"), an entity engaged in the mortgage-writing business. The government indicted Basroon after an investigation into fraudulent misrepresentations that Basroon and Plaza allegedly made to investors. After a jury trial, Basroon was convicted on both counts charged in the superseding indictment: (1) conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. 371, and (2) interstate transportation of property taken by fraud, in violation of 18 U.S.C. 2314 and 2.

Basroon appeals his conviction on numerous grounds. He contends that his conviction was based on false evidence that Plaza was insolvent, that the government's accounting expert improperly testified as to matters beyond the scope of his expertise, that the government introduced irrelevant and highly prejudicial evidence, that the government engaged in prosecutorial misconduct during summation, that the jury was improperly instructed as to both the conspiracy count and the interstate transportation of property taken by fraud count for several reasons, that the government presented insufficient evidence to sustain his convictions as to both counts, that he was prejudiced by pre-indictment delay, and that the conspiracy charge was barred by the statute of limitations. Because the parties are familiar with the facts of this case, we recount them here only to the extent necessary to explain our rulings.

## Discussion

### I. Evidence that Plaza was Insolvent

Basroon points out that if Plaza had not been insolvent at the time he made various alleged misrepresentations to investors, the government would have had difficulty meeting its burden of proving that Basroon knew that he could not fulfill the representations he made at the time that he made them or that he had concealed Plaza's insolvency. The government called an expert witness, Herbert Miller, to testify as to Plaza's insolvency during the relevant time period. Basroon argues that Miller presented "false evidence" of Plaza's insolvency, claiming that Miller improperly failed to value Plaza at "fair value" and instead erroneously valued Plaza's assets and liabilities using Generally Accepted Accounting Principles, which required Miller to alter Plaza's balance sheets by deferring substantial portions of income over time. Without these adjustments, Basroon contends that Plaza's balance sheets reflected that it was solvent during the relevant time period. We review Basroon's claim only for plain error, as Basroon failed to timely object below. United States v. Stewart, 283 F.3d 579, 580 (3d Cir. 2002).

Miller stated that he would perform a "fair value" analysis, and his methodology would not have been adequate to meet a party's burden of proving insolvency in a bankruptcy proceeding. See, e.g., In re Merry-Go-Round Enterprises Inc., 229 B.R. 337, 342-43 (Bankr. Md. 1999). In such a proceeding, insolvency, meaning "the sum of such entity's debts is greater than all of such entity's property," 11 U.S.C. 101(32)(A), must be demonstrated by the "fair value" method where a fair valuation of an entity's property refers to the amount of cash that could be realized from a sale of the property during a reasonable period of time. Travellers International AG v. Trans World Airlines, Inc., 134 F.3d 188, 194 (3d Cir. 1998).

However, as Basroon concedes, "there are different definitions of insolvency." Basroon does not explain why Miller was bound to use the definition from the Bankruptcy Code. This was not a bankruptcy proceeding, and Miller's methodology was not plainly erroneous. Basroon argues with some of the assumptions and estimates that Miller made; Miller's testimony could have been the subject of cross-examination, and at trial Basroon passed on the opportunity to use his own expert witness for rebuttal. Miller's error, if any, was not plain.

### II. Scope of Miller's Testimony

Next, Basroon claims that Miller's testimony "impermissibly invaded the province of the jury on critical issues such as Basroon's intent and the credibility of Basroon's deposition testimony." Basroon pinpoints three alleged violations of Federal Evidence Rule 704(b) in Miller's testimony: Miller's testimony that Plaza's operations were consistent with the operation of a Ponzi scheme, Miller's testimony that Plaza's financial statements were false and misleading, and Miller's testimony that Basroon had not offered an adequate explanation for variations between Plaza's tax returns and financial statements in his depositions.

#### A. Miller's Opinion that Plaza's Operation was Consistent with the

Operation of a Ponzi Scheme

Miller was permitted to testify, over objection, that a Ponzi scheme is a scheme to defraud investors, and that Plaza's operation was "consistent with" the operation of a Ponzi scheme.  Basroon claims that this testimony impermissibly stated an "opinion or inference" as to Basroon's mental state, i.e., his intent, violating Fed. R. Evid. 704(b).  See U.S. v. Bennett, 161 F.3d 171, 182 (3d Cir. 1998) (Rule 704(b) prohibits expert testimony "from which it necessarily follows ... that the defendant did or did not possess the requisite mens rea.") (internal quotations omitted).

However, contrary to Basroon's assertions, Miller never implied that Basroon intended to defraud investors or intended to run a Ponzi scheme.  The government did not question Miller about Basroon's mental state, and the conclusion that Basroon possessed the requisite mental state did not necessarily follow from Miller's testimony.  Accordingly, the district court did not err in admitting this testimony.  See  United States v. Watson, 260 F.3d 301, 308 (3d Cir. 2001).

B.    Millers's Testimony that Plaza's Financial Statements were False and Misleading

Miller testified that the accounting techniques used by Basroon to prepare Plaza's books and records were false and misleading, and when asked to opine as to the quality of the financial statements, testified that he "would not even classify them as being financial statements."  While Basroon argues that this testimony conveyed to the jury that Basroon acted with fraudulent intent in preparing the financial statements, the questions were all factual, going only to the quality of the financial statements.  There was no discussion of Basroon's intent in filing the financial statements, and their admission was not error.

C.    Miller's Testimony Regarding Basroon's Explanation for Variations Between Plaza's Financial Statements and Income Tax Returns

Miller was shown a chart illustrating variations between Plaza's financial statements and income tax returns.  Miller testified that the explanation for those variations given by Basroon in his civil deposition testimony was "totally inadequate," without documentation, and "didn't make any sense to [him]."  Similarly, when Miller was asked about Basroon's explanation for the difference between Plaza's financial statements and Miller's calculation of Plaza's loss, Miller testified that he found Basroon's "explanation to be inadequate."  Basroon attacks this testimony as violating the prohibition on expert opinion as to the credibility of a witness.

However, Miller did not opine as to Basroon's credibility, but rather, commented on the accounting basis for the explanation offered by another accountant (Basroon) to explain accounting decisions made in financial documents.  The testimony was not a direct attack on Basroon's credibility, and the testimony was properly admitted.

III.    Introduction of Allegedly Irrelevant and Prejudicial Evidence

Next, Basroon claims that various testimony which he characterizes as Federal Rule of Evidence 404(b) (prior bad acts) evidence was introduced for the impermissible purposes of proving general bad character and inflaming the jury's passion.

The evidence that Basroon claims should have been excluded includes testimony regarding the guardianship of Tammy Koch, evidence that Basroon's conduct led to the loss of investors' retirement and pension funds, evidence that Basroon had violated state ethics rules, evidence that Basroon had falsified an IRS Form 1099, and testimony concerning allegedly false statements made to Vinings Bank, which had extended a line of credit to Plaza.

Having thoroughly reviewed the record, we conclude that Basroon's various Rule 404(b) evidentiary challenges lack merit.  At trial Basroon failed to object to the admission of much of this evidence.  As to the evidence that Basroon did timely object to, much of the evidence was properly admitted.  To the extent that evidence was improperly admitted, the error was harmless, due to the overwhelming independent evidence upon which the jury could have based its conviction.  U.S. v. Murray, 103 F.3d 310, 319 (3d Cir. 1997).

IV.  Alleged Prosecutorial Misconduct re: Prosecutor's  Statements During Summation

Basroon next contends that the prosecutor misled the jury by referring to evidence that was not in the record, by improperly commenting on Basroon's failure to testify, by improperly commenting on victim-impact evidence and the fact that the investors, at the time of trial, had still not received compensation, and by making improper attacks on

Basroon's character.

### A.    Reference to Evidence Outside the Record

Among the many facts that the government used to attempt to prove that Basroon was misrepresenting the financial condition of Plaza was the incident in which he told Kenneth Seidman that he was looking to sell off a considerable portion of Plaza's loan portfolio due to continuing financial troubles on the same day that Plaza was accepting additional investments from Pierce and Agnes Bouvet.  In closing arguments, the government stated:  "What about the Boves [sic], whose checks you have in evidence and again who handed Basroon checks in mid January.  The same date he was making a series of extraordinary false statements to Kenneth Seidman on the tape, the Boves [sic] were paying thousands of dollars to be invested."

While the government presented evidence that the Bouvets relinquished possession of the checks and gave possession of them to Plaza, there was no evidence that Basroon himself, rather than someone else at Plaza, solicited the Bouvets' investments.  Indeed, there was no evidence that Basroon knew about these checks.  Basroon claims that because the statement that he personally received the checks was not supported by the evidence, it unduly prejudiced him.

However, the jury asked during deliberations "who solicited [the Bouvet] investments and when were they solicited?"  The district court responded to the jury's question by stating that counsel agreed "that there is no evidence in the record with respect to who solicited the Bove [sic] investment."  In light of this instruction, and in light of consideration of the relative unimportance of these statements in the context of the entire trial, Basroon was not prejudiced.  See United States v. Helbling, 209 F.3d 226, 241 (3d Cir. 2000).

### B.    Comments on Basroon's Failure to Testify

Basroon claims that the prosecutor's statement in rebuttal summation "here are the questions that the defendant didn't answer" amounted to a comment on Basroon's failure to testify.

The government may not comment on a defendant's failure to testify, either directly or indirectly.  Griffen v. California, 380 U.S. 609, 615 (1965); United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996).  However, indirect references constitute reversible error only if they were of such character that the jury would "naturally and necessarily take [them] to be a comment on the failure of the accused to testify."  Lesko v. Lehman, 925 F.2d 1527, 1544 (3d Cir. 1991) (internal quotations omitted).

Here, the government stated that:

It was the defendant who put the investors' money into these see-through homes and nobody else.  Think about the evidence that you have heard in this case and you will realize that Leslie Johnson may have committed fraud.  We went a long way towards proving that to you, before the defense lawyer even asked her a single question, but who else committed a fraud in this case?  The defendant Martin Basroon.

Here are the questions that the defendant didn't answer.  He's blamed Leslie Johnson.  He's blamed Nathan Parsa.....

Taken in context, it is clear that the statement "here are the questions that the defendant didn't answer" does not "naturally and necessarily" refer to Basroon's failure to testify.  Rather, the statement refers to questions that, in the government's estimation, the defense team had failed to adequately answer.  Accordingly, Basroon's argument is without merit.

### C.    Victim-Impact Evidence and the Fact that Investors had Not Received Compensation

Basroon argues that the government improperly asked the jury to rely on victim impact evidence to convict Basroon.  Specifically, the government pointed out in summation that the investors lost their retirement money and that Tammy Koch needed the money to survive.  The government also argued that after seven years had passed, the "monies are still gone.  Those people are still making up for that -- that's lost."  Although we find this an inappropriate emotional argument and do not approve of this tactic, Basroon failed to object to the summation statement, and did not object during trial to the testimony when it was elicited from individual investors.  Moreover, considering the minor role that these statements played within the context of the entire trial and the weight of the evidence presented against him, we conclude that their admission was not

prejudicial.

### D. Attacks on Basroon's Character

The government called Basroon a "liar" and a "crook," and stated in closing that "you know the defendant is guilty." The government also referred to Basroon's bouncing of checks as a "crime." Basroon argues that these statements were improper personal opinions about the evidence "because it improperly implies to the jury that the prosecutor has additional evidence in his file, other than the evidence of record, that the defendant engaged in illegal conduct." However, at the end of closing, the court gave an instruction that the jury's memory controlled as to the evidence. Although some of the government's statements were offensive, and we do not approve of its conduct, the district court neutralized any prejudicial effect by instructing the jury "to treat the arguments of counsel as devoid of evidentiary content." See United States v. Somers, 496 F.2d 723, 738 (3d Cir. 1974).

### IV. Allegation that Jury was Not Charged as to the Duty to Disclose

The government charged Basroon with numerous omissions. Basroon contends that the jury was instructed that Basroon could be guilty of mail fraud for either a fraudulent representation or a fraudulent omission, but the jury was not advised that Basroon could be guilty of a fraudulent omission only if he had an affirmative duty to disclose, nor was the jury told what circumstances would create such a duty. Because Basroon failed to object to the omission of a charge on duty to disclose, we review for plain error.

One who fails to disclose material information prior to the consummation of a transaction commits fraud only when under a duty to do so. Chiarella v. United States, 445 U.S. 222, 228 (1980); Restatement (Second) of Torts 551 (1976). However, the district court did not err by failing to submit a "duty to disclose" instruction. Basroon concedes that a duty to disclose may be raised by partial statements if the speaker tells a half-truth or if the omission qualifies as a concealment. See Restatement 551(2)(b) (disclosure necessary to prevent someone from being misled by a "partial or ambiguous" statement); see also United States v. Olatunji, 872 F.2d 1161 (3d Cir. 1989) (fraudulent representations may be effected by deceitful statements of half-truths or the concealment of material facts and the devising of a scheme for obtaining money or property by such statements or concealments); United States v. Cotton, 231 F.3d 890 (4th Cir. 2000) (even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent other party from acquiring material information); United States v. Moore, 37 F.3d 169, 173 (5th Cir. 1994) (holding irrelevant whether duty to disclose existed under state law because evidence established that defendants intended to deceive other party).

An examination of the jury instructions reveals that Basroon's argument is without merit. Basroon first challenges the portion of the instructions titled Proof of Knowledge Deliberate Ignorance (Count 1). There, the district court charged that the "government can meet its burden of proving fraudulent intent by showing that the defendant knowingly participated in a fraudulent scheme, made or caused to be made false statements, or omitted or caused to be omitted material facts." Id. (emphasis added). The instruction does not indicate that an omission can be the requisite fraudulent act, but merely that it can serve as an indicator of intent.

The jury instruction that deals with what the government must prove as to a scheme to defraud indicates that a "scheme to defraud ... must ... involve some sort of fraudulent misrepresentations or omissions, that is, deliberate failures to disclose information or facts, reasonably calculated to deceive persons of ordinary prudence and comprehension." A405. (emphasis added). This qualification eliminates the need for a "duty to disclose" instruction. Because the instructions cover only the variety of omissions for which proof of an affirmative duty to disclose is not required, the district court did not err by failing to provide a "duty to disclose" instruction.

### VI. Claim that Jury Charge Failed to Properly Describe Nature of Conspiracy

Next, Basroon claims that the jury charge improperly failed to identify the specific objectives of the charged conspiracy and muddled the fact that Johnson was the only alleged co-conspirator by charging multiple conspiracies. Because Basroon did not raise this objection below, we again review for plain error.

To convict a defendant on a conspiracy charge, the government must prove that the

defendant agreed to the essential nature of the plan and on the kind of criminal conduct in fact contemplated, and the defendant must be shown to have agreed to commit a particular offense and not merely a vague agreement to do something wrong. United States v. Salameh, 152 F.3d 88, 147 (2d Cir. 1998).

Basroon notes that although Johnson was the only co-conspirator alleged in the superseding indictment, the district court read to the jury a redacted version of the indictment, which was replete with references to "other conspirators" with whom Basroon supposedly conspired. However, at Basroon's request, the district court instructed the jury that Johnson was the only alleged co-conspirator, and also allowed a written statement to this effect to be submitted to the jury. The district court's instruction cured any error.

Basroon also claims that the instructions failed to adequately particularize the object of the charged conspiracy and could have led to Basroon's conviction for something other than the conspiracy with which he was charged. However, the superseding indictment itself sufficiently particularized the objects of the conspiracy in detail and provided sufficient information regarding Basroon's alleged misrepresentations and omissions.

### VII. Intra-Corporate Conspiracy Doctrine

Next, Basroon claims that the conspiracy charge, and the jury instruction relating thereto, violated the intra-corporate conspiracy doctrine, which holds (usually in a civil context) that, because corporate employees are ordinarily attributed to the corporation, two employees of a corporation, acting within the scope of their employment, cannot conspire with one another. E.g., McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000).

As to the conspiracy count, the district court charged the jury: "A corporation cannot conspire with its own officers and employees. This is because in the eyes of the law, a corporation, its officers, and employees are so closely related that they are considered by the law to be one actor. It is, however, possible for two employees of a corporation to conspire with each other." Basroon agrees with the first two sentences of that charge, but argues that the intra-corporate conspiracy doctrine is inconsistent with the third.

While the intra-corporate conspiracy doctrine has been applied by some courts to civil rights complaints brought pursuant to 42 U.S.C. 1985, this court has specifically rejected the doctrine, even in the civil context. Novotny v. Great Am. Fed. S&L, 584 F.2d 1235, 1256 (3d Cir. 1978), vacated on other grounds, 442 U.S. 366 (1979). Even those federal appellate courts accepting the intra-corporate conspiracy doctrine in this context have typically refused to extend the theory from the civil context to bar a criminal conspiracy prosecution. See, e.g., United States v. Hughes Aircraft Co., 20 F.3d 974, 978-79 (9th Cir. 1994); United States v. Ames Sintering Co., 927 F.2d 232, 236 (6th Cir. 1990); United States v. Hugh Chalmers Chevrolet-Toyota, Inc., 800 F.2d 737, 738 (8th Cir. 1986); see also McAndrew, 206 F.3d at 1038. But see United States v. Suntar Roofing, 897 F.2d 469, 476 (10th Cir. 1990) (dicta suggesting that wholly intra-corporate conduct might not create the plurality of actors necessary for a valid criminal conspiracy conviction); United States v. Notarantonio, 758 F.2d 777, 789 (1st Cir. 1985) (same).

Because this Circuit does not recognize the intra-corporate conspiracy doctrine even within the civil context, it clearly does not apply in the criminal context. Accordingly, we reject Basroon's argument that the intra-corporate conspiracy doctrine rendered the jury instruction erroneous.

### VIII. "Willful Blindness" Instruction

Next, Basroon claims that a "willful blindness" jury instruction given by the district court impermissibly lessened the government's burden of proof as to his requisite mental state.

The jury was instructed, as to the conspiracy charge:

> The government can meet its burden by proving fraudulent intent not only by showing that a defendant knowingly lied but also by proving beyond a reasonable doubt that he acted ... with a conscious purpose to avoid learning the truth.

> Stated another way, a defendant's knowledge of a fact may be inferred from a deliberate or intentional ignorance of or willful blindness to the existence of that fact.

A willful blindness charge does not lower the government's burden of proving intent as long as it emphasizes the necessity of proving a subjective awareness, and if the charge satisfies this standard, and is supported by sufficient evidence, it is not inconsistent for a court to charge a jury on both an actual knowledge theory and a willful blindness theory. United States v. Stewart, 185 F.3d 112, 126 (3d Cir. 1999). A review of the record confirms that there was sufficient evidence to support the willful blindness jury instruction. The jury could have reasonably believed that, although Basroon was subjectively aware of the high probability that his actions were illegal, he lacked the requisite intent only because he purposefully blinded himself to the consequences of his actions and to the reality of Plaza's financial condition.

Basroon also argues that the willful blindness instruction was error because it was impossible for Basroon to have intended to join a conspiracy if he did not know that it existed. However, this Court has previously rejected this precise argument. United States v. Wertz-Ruiz, 228 F.3d 250, 255 n.3 (3d Cir. 2000).

IX. Sufficiency of the Evidence

Basroon argues that the government adduced insufficient evidence to support a conviction as to both the conspiracy count and the interstate transportation of a security count.

A. Conspiracy

The government was required to establish three elements in order to convict Basroon of a conspiracy: (1) a unity of purpose between two or more persons; (2) an intent to achieve the goal alleged to be the object of the conspiracy; and (3) an agreement to work together. United States v. Robinson, 167 F.3d 824, 829 (3d Cir.), cert. denied, 528 U.S. 846 (1999). Basroon argues that there was insufficient evidence of an agreement between Johnson and himself to work together and of an intent to defraud investors.

The superseding indictment charged Basroon with conspiring with Johnson to deprive investors of their funds by misleading them into believing that funds would be invested and safeguarded in a particular manner. To establish these allegations, the government called Johnson as a witness. Johnson's testimony, taken in the light most favorable to the government, was clearly sufficient to establish the conspiracy charged in the superseding indictment. For instance, Johnson testified that she knew the representations which Basroon was making to the investors regarding the measures supposedly being taken to protect their investments. She also testified that at Basroon's direction, she assigned a single property to secure an investor's funds as well as to obtain funds advanced by Vinings Bank, thus "double pledging" the property and leaving a substantial amount of the investors' funds unsecured, that she used investor money to pay Plaza's bills instead of lending it to qualified borrowers, and that she falsified the aging schedules of mortgages assigned to Vinings Bank, Plaza's principal creditor. Similarly, the evidence of the numerous material misrepresentations that Basroon made to investors, viewed in the light most favorable to the government, was clearly sufficient to sustain a reasonable inference that Basroon intended to defraud investors.

Basroon also argues that some of the many misrepresentations alleged as objects of the conspiracy were not "material," that they constituted mere "puffery," and that they were merely "false statements as to future events," which he claims cannot constitute fraud. However, because the superseding indictment charged Basroon with numerous misrepresentations and omissions as objects of the conspiracy, the conviction must be sustained if there is sufficient evidence from which the jury could have found that at least one object of the conspiracy had been proven. See United States v. Morelli, 169 F.3d 798, 802 (3d Cir.) cert. denied, 528 U.S. 820 (1999). Basroon challenges only a few of the alleged misrepresentations as "non-material," and thus implicitly concedes, as he must, that other misrepresentations alleged were indeed material. Because sufficient evidence was presented at trial for a jury to have convicted Basroon on numerous material misrepresentations, we reject this argument.

B. Interstate Transportation of a Security

As to Count Two, Basroon argues that the government adduced insufficient evidence to show that he intended to defraud Paul Sica when he took a check from Sica for approximately $17,000 in December 1992. Having reviewed the record, we find that the evidence supports the inference that at the time he accepted the money, Basroon

knew the money was not going to be used to finance a mortgage, but to pay Plaza's bills.

    X.    Pre-Indictment Delay

    Basroon next argues that the case should have been dismissed based on the "presumptive prejudice inherent in the government's 4 1/2  year delay in bringing the charges."  Where as here, the charges were brought inside the applicable statute of limitations, to obtain a dismissal of charges on the grounds of pre-indictment delay a defendant bears the burden of proving that (1) the delay between the crime and the indictment actually prejudiced the defense; and (2) the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him. United States v. Beckett, 208 F.3d 140, 150 (3d Cir. 2000).  Because Basroon has failed to demonstrate that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him, this claim fails.

    XI.   Statute of Limitations

    The superseding indictment was issued outside the applicable statute of limitations period (more than seven years after the alleged crime).  While Basroon concedes that statute of limitations was tolled as to Count Two by virtue of the original indictment, he argues that it was not tolled as to Count One because the conspiracy charges in the superseding indictment are different and broader than the conspiracy charges in the original indictment.  However, Basroon did not raise the statute of limitations defense before the district court, and cannot assert it for the first time on appeal.  See United States v. Oliva, 46 F.3d 320, 325 (3d Cir. 1995).

                        CONCLUSION

    For the foregoing reasons, Basroon's conviction and sentence are AFFIRMED.